[File No. 7221]

STATE OF NORTH DAKOTA, Appellant, v. MAYME
ROSENQUIST and Divide County, a Quasi Municipal
Corporation, and Mayme Rosenquist, Respondent.

(51 NW2d 767)

674

Opinion filed February 8, 1952

Honorable *Wallace E. Warner*, Attorney General; *C. E. Brace* and *P. O. Sathre*, Assistant Attorneys General, all of Bismarck, for appellant.

*George P. Homnes*, Crosby, for respondent.

*Wallace E. Warner*, Attorney General, *C. E. Brace* and *P. O. Sathre*, Assistant Attorneys General, for appellant.

*George. P. Homnes,* for respondent.

CHRISTIANSON, J. The plaintiff brought this action against Mayme Rosenquist and Divide County to determine adverse

claims to "all that portion of the South half (S½) of the South-west quarter (SW¼) of Section twenty-nine (29) in Township One Hundred Sixty-three (163) North of Range Ninety-seven (97) West of the 5th P.M., and not heretofore conveyed by deeds to others by the plaintiff by and through the Board of University and School Lands." The complaint is in the usual form in a statutory action to determine adverse claims. It alleges that the plaintiff is the owner in fee of the tract of land described in the complaint, subject to a contract of sale therefor to one Helen Anderson which contract is in good standing and in full force and effect. It further alleges that the defendants claim certain estates or interests in, or liens or encumbrances upon, the premises, adverse to the plaintiff. Plaintiff prays that the defendants be required to set forth all their adverse claims to the property and that the validity, superiority and priority thereof be determined; that the same be adjudged null and void; that the defendants be decreed to have no estate or interest in, or lien or encumbrance upon, said property; that the plaintiff's title be quieted as to such claims and that the defendants be debarred from further asserting the same. Both defendants interposed answers. The defendant Rosenquist in her answer denies that the plaintiff is the owner in fee of all the lands described in the complaint and alleges that she is the owner in fee of that part "of the Southwest quarter (SW¼) of section twenty-nine (29) in Township One Hundred Sixty-three (163) North of Range Ninety-seven (97) West in Divide County, North Dakota, described as follows: a strip or piece of land one hundred and fifty feet wide, being seventy-five feet wide on the northerly side and seventy-five feet wide on the southerly side of the center line of a proposed right of way of the Great Northern Railway Company located and established by said Railway Company extending across from the East side to the West side of said quarter section and included within that part of said quarter section described in the complaint, also known as Auditor's Lot number eleven (11) of Divide County, and being the premises conveyed by Alfred Erickson and Anna Erickson, his wife, to the Great Northern Railway Company by deed dated the 1st day of March, 1913, recorded in Book five (5) of Deeds on page 19 in the office

of the register of deeds of Divide County, North Dakota, and containing 8.82 acres, said premises having been conveyed to the defendant, Mayme Rosenquist, by the county of Divide on the 5th day of February, 1946." She prays judgment "that the plaintiff be excluded from any estate or interest in and to the said tract of land described in her answer" and forever debarred and enjoined from making any claim of interest therein, "and that she be adjudged the owner in fee of said tract and entitled to the immediate possession thereof."

The defendant Divide County denies that the plaintiff is the owner of the tract of land described in the answer of the defendant Rosenquist and alleges that on March 1, 1913, Alfred Erickson, the then owner of said land, and his wife, made a deed to the Great Northern Railway Company as shown in Book 5, page 19, in the office of the Register of Deeds of Divide County; and that on the 5th day of December, 1921, the Great Northern Railway Company conveyed the land described in the deed from Alfred Erickson and wife to the Great Northern Railway Company by deed to Dakota and Great Northern Townsite Company, which latter deed was duly recorded in the office of the Register of. Deeds for Divide County, in Book 25 at page 201. That on the 20th day of May, 1926, the Dakota and Great Northern Townsite Company conveyed the tract in question to Christ Semingson by deed which is recorded in Book 31 of Deeds at page 340 thereof in the office of the register of deeds of Divide County. That on October 2, 1940, a tax deed was executed and delivered to defendant county of Divide based upon the 1928 taxes against said tract of land, which deed was recorded in the office of the register of deeds in and for Divide County in Book 40 of Deeds at page 199 thereof. That thereafter on February 5, 1946, the said tract was conveyed to the defendant Mayme Rosenquist by deed executed by the County of Divide and recorded in the office of the Register of Deeds in and for Divide County in Book 44 of Deeds at page 496. That the plaintiff acquired title to the SW¼ of Section 29, Township 163 North, Range 97 West, by virtue of a sheriff's deed issued upon the foreclosure of a mortgage which mortgage recited that there was excepted therefrom "deeded and platted parts" of

said SW¼ of Section 29 and that the mortgage upon which such sheriff's deed had been issued did not include the tract of land described in the answer of Mayme Rosenquist and that the plaintiff has no right or interest in or title thereto. The defendant Divide County prays that title to that part of the SW¼ of said Section 29, Township 163, Range 97, described in the answer of said defendant, Mayme Rosenquist, be quieted in her, the rightful owner thereof, and that the plaintiff be forever debarred or enjoined from claiming any interest or title to such land.

The case was tried to the court upon the issues framed by the pleadings. The court made findings of fact and conclusions of law in favor of the defendant, Mayme Rosenquist. From the facts found the court reached the conclusions that the plaintiff never acquired title to the said 8.82 acre tract and never had any lien thereon; that the plaintiff being a stranger to the title to said tract, never having owned the same or had a lien thereon, had no right to question the validity of the tax deed, or the deed to the defendant; and that the defendant, Mayme Rosenquist, is entitled to have the title to the said 8.82 acre tract quieted against all adverse claims of the plaintiff. The court ordered that judgment be entered quieting title to the said 8.82 acre tract in the defendant, Mayme Rosenquist, against all adverse claims of the plaintiff, and that the plaintiff be debarred and enjoined from asserting any claim to said premises. Judgment was entered accordingly and the plaintiff has appealed from the judgment and demands a new trial in this court.

The material facts are not in dispute and may be stated substantially as follows: The undisputed evidence shows that Caroline Swenson acquired title to the SW¼ of Section 29, Township 163 North, Range 97 West, by patent issued to her by the United States of America and that on October 22, 1906, said Caroline Swenson conveyed the said premises by warranty deed to Alfred Erickson and that such deed was duly recorded in the office of the Register of Deeds of the county in which the land was located on November 14, 1906. Thereafter the said Alfred Erickson and Anna Erickson, his wife, duly executed and delivered to the Great Northern Railway Company a deed dated and acknowledged on March 1, 1913, which said deed contained

covenants of seizin, quiet enjoyment, further assurance, general warranty, and against encumbrances, and recited that said Alfred Erickson and Anna Erickson, his wife, parties of the first part, "for and in consideration of the sum of One Thousand Dollars, to them in hand paid by THE GREAT NORTHERN RAILWAY COMPANY, party of the second part, the receipt whereof is hereby acknowledged, does hereby GRANT, BARGAIN, SELL and CONVEY unto the said party of the second part, its successors and assigns, a piece, parcel or tract of land situated in the County of Divide and State of North Dakota, described as follows to-wit:

"A strip or piece of land, One Hundred and Fifty (150) feet, wide, being Seventy Five feet wide, on the Northerly side and Seventy Five feet wide on the Southerly side of the center line of the railway of said Railway company, as the same is now located and established, and extending Across from the East side to the West side of the Southwest quarter (SW$\frac{1}{4}$) of Section No. Twenty Nine (29) in Township No. One Hundred Sixty Three (163) North of Range No. Ninety Seven West. Containing Eight and eighty two One Hundredths (8.82) acres, more or less."

Such deed was duly recorded in the office of the Register of Deeds of Divide County on June 30, 1913, in Book 5 of Deeds at page 19 thereof. For convenience the strip or piece of land described in said deed and sought to be conveyed thereby will be referred to hereafter as the 8.82 acre tract.

On December 1, 1914, Alfred Erickson and his wife executed and delivered to Christ S. Semingson a deed of general warranty reciting that Alfred Erickson and Anna Erickson, husband and wife, parties of the first part, in consideration of the sum of $7,450.00 to them in hand paid by Christ S. Semingson, the party of the second part, receipt of which is acknowledged, "do hereby Grant, Bargain, Sell and Convey unto the said party of the second part, his heirs and assigns, Forever, all those tracts or parcels of land lying and being in the County of Divide, and State of North Dakota, to-wit:

"All of Blocks Six (6), Thirteen (13) Fourteen (14) and Fifteen (15) in Erickson's addition to Crosby (Revised) and the

South west Quarter of Section Twenty-nine, Township One Hundred Sixty three, Range *Ninty* Seven, 5th P. M. (SW¼–29–163–97) except Great Northern Right of Way also a two acre tract in the northwest corner of the quarter deeded to Tom T. Lee and two one acre tracts in the south east corner of the quarter, one tract sold to Albertina Kleinsmith and one to Bertha M. Feeney, and the whole of Erickson's addition to Crosby (Revised)."

This deed was filed for record in the office of the Register of Deeds of Divide County on December 12, 1914, and duly recorded in Book 10 of Deeds at page 592 thereof. On April 30, 1919, said Christ S. Semingson and his wife executed and delivered to the plaintiff, the State of North Dakota, a certain mortgage to secure the payment of the sum of $3000. The premises encumbered by such mortgage were described as "all that tract or parcel of land lying and being in the County of Divide and State of North Dakota, and described as follows, to-wit: The Southwest Quarter (except deeded and platted parts) of Section Number Twenty-nine in Township Number One Hundred Sixty-three North, of Range Number Ninety-seven West of the Fifth Principal Meridian, containing 105.63 acres more or less according to the Government survey thereof." Such mortgage was duly filed for record in the office of the Register of Deeds of said Divide County on May 28, 1919, and duly recorded in Book 59 of Mortgages at page 138 thereof.

Default having been made in the conditions of said mortgage the plaintiff, the State of North Dakota, the mortgagee named in said mortgage, caused the mortgage to be foreclosed and the premises described therein to be sold pursuant to law. The plaintiff purchased the premises at such sale. No redemption was made and on December 17, 1926, sheriff's deed was issued to the plaintiff upon such foreclosure and such sheriff's deed was duly filed for record in the office of the Register of Deeds of said Divide County on January 24, 1927, and there duly recorded in Book 21 of Deeds at page 527 thereof. In such sheriff's deed the premises conveyed thereby were described as follows: "all the following described premises, situate, lying

and being in the County of Divide, State of North Dakota, to-wit:

"The Southwest Quarter (except deeded and platted parts) of Section Number Twenty-nine, in Township Number One Hundred Sixty-three North, of Range Number Ninety-seven, West of the Fifth Principal Meridian, containing 105.63 acres more or less according to the Government survey thereof."

Plaintiff's claim of title is predicated upon such sheriff's deed. Subsequent to the execution and delivery of such sheriff's deed the plaintiff leased the premises during the year 1927 and following years. In the leases for 1929 and the following years the premises were described as "fractional SW¼ of Section 29" or "part of SW¼ of Section 29." On May 18, 1946, the plaintiff, the State of North Dakota, entered into and executed a written contract for the sale of land to one Helen Anderson. Such contract recited: "at a public sale held pursuant to law in the County of Divide, State of North Dakota, at Crosby, North Dakota on the 29th day of March, 1946, the said vendee purchased the lands described as follows, to-wit: Southwest Quarter (SW¼) of Section Twenty Nine (29) Township One Hundred Sixty Three (163) North of Range Ninety Seven (97) West, except part deeded and platted, lying and being in Divide County, and containing 101.64 acres, more or less, and appurtenances thereto belonging."

On December 5, 1921, the Great Northern Railway Company executed and delivered to Dakota and Great Northern Townsite Company a deed for the said 8.82 acre tract which deed was filed for record in the office of the Register of Deeds of said Divide County, March 3, 1922, and recorded in Book 25 of Deeds at page 221 thereof. Thereafter on May 20, 1926, the Dakota and Great Northern Townsite Company executed and delivered a quit claim deed conveying the said 8.82 acre tract to Christ S. Semingson. In such deed the premises conveyed were described as follows: "that piece, parcel or tract of land situated in Divide County, State of North Dakota, described as follows:

"All that part of the southwest quarter (SW¼) of section twenty-nine (29), township one hundred sixty-three (163) North, Range ninety-seven (97) west, lying within two (2) lines paral-

lel to and distant, respectively, seventy-five (75) feet northerly and seventy-five (75) feet southerly from the center line of the railway of the Great Northern Railway Company, as located and staked out on the ground, but never constructed, and lying southwest of a line parallel to and distant fifty (50) feet southwesterly from the center line of the railway of said Great Northern Railway Company, as now located and constructed, containing eight and eighty-two hundredths (8.82) acres, more or less; being the premises conveyed by Alfred Erickson and Anna Erickson, his wife, to said Great Northern Railway Company by deed dated the first day of March, 1913, filed for record on the thirtieth day of June, 1913, in the office of the Register of Deeds of said Divide County, and there recorded in Book '5' of deeds on page 19.''

Taxes were levied against said 8.82 acre tract and at the tax sale held in Divide County on December 19, 1929, the said 8.82 acre tract was struck off and sold to the county of Divide for the taxes levied against such tract for the year 1928. Thereafter such proceedings were had that on October 2, 1940, a tax deed was issued to Divide County for said 8.82 acre tract of land which said tax deed was filed for record in the office of the Register of Deeds of Divide County on May 12, 1941, and recorded in Book 40 of Deeds at page 199 thereof. Thereafter the defendant Mayme Rosenquist purchased the said 8.82 acre tract of land from the county of Divide and on the 5th day of February, 1946, the said county of Divide executed and delivered to the said defendant Mayme Rosenquist a deed conveying to the said Mayme Rosenquist the said 8.82 acre tract of land, which deed was filed for record in the office of the Register of Deeds of said Divide County on May 8, 1947, and recorded in Book 44 of Deeds at page 496 thereof. On November 5, 1947, the said county of Divide executed and delivered to the said defendant Mayme Rosenquist another deed conveying to her the said 8.82 acre tract which said deed was filed for record in the office of the Register of Deeds of said Divide County on September 27, 1949, and recorded in Book 44 of Deeds at page 650 thereof. The latter deed recites that it was made pursuant to an order of the Board of County Commissioners of Divide

County to make definite the description of the land, and the land is described with particularity and the definite boundaries of the tract stated as shown on the blueprint of the survey by the Great Northern Railway Company of a railroad across the said SW¼ of Section 29, which blueprint is more fully described hereafter in this opinion.

Plaintiff contends: (1) that the description of the property in the deed from Alfred Erickson and wife to the Great Northern Railway Company is so indefinite as to render the deed void and ineffectual as a conveyance and that consequently the deed executed and delivered by Alfred Erickson and wife to Christ S. Semingson included the said 8.82 acre tract; and (2)· that the tax·deed executed and delivered to Divide County was void because of alleged defects in the proceedings and in the tax deed. These contentions will be considered in the order stated.

The defendant introduced in evidence a blueprint showing a survey or profile of a line of railroad of the Great Northern Railway Company extending across from the east side to the west side of the SW¼ of Section 29, Township 163, Range 97.. The line so shown projected from a point on a line of the Great Northern Railway Company that had been constructed and was then in operation. There is endorsed upon said map or profile the statement, "Located Line of the Great Northern Railway from Sec 29, Town 163 N., Range 97 W. to Sec 3, Town 161 N., Range 101 W. Sta. 4686+00 to Sta. 5954+00." Immediately below this statement there is endorsed upon such map or profile an affidavit of the Chief Engineer of the Great Northern Railway Company and a certificate signed by the President and attested by the Secretary of the Great Northern Railway Company. The following is a photostatic copy of the statement, of the affidavit of the Chief Engineer and of the certificate signed by the President and attested by the Secretary of the Great Northern Railway Company endorsed on the said map or profile:

There is a notation on said map or profile that it was approved by the Secretary of the Interior on May 29, 1914. There was also offered in evidence another blueprint showing the same line of railway as was shown on the blueprint mentioned above extending across the SW¼ of Section 29 and the SE¼ of Section 30. This latter blueprint does not contain the affidavit of the Chief Engineer or the certificate of the President of the Railway Company but it shows not only the center line of the rail-

road but the width of the right of way, which across the said SW¼ of Section 29, is seventy-five feet on each side of the center line. Counsel for the plaintiff objected to the admission of these blueprints on the ground that they were incompetent, irrelevant and immaterial until it was shown that they had been recorded in the office of the Register of Deeds of the county. In a discussion between counsel for the respective parties it was stated by counsel for both parties that they had been unable to find a record of the map in the office of the Register of Deeds of the county. Counsel for the plaintiff amplified his objection by asserting that the railroad shown on the blueprint had never been built. Plaintiff's counsel further elucidated his objection by stating that the map did not in any way aid the description in the deed; that the deed referred to the center line of a railway and that the map does not tend to show the establishment of any railroad because no railroad ever was established or built. Plaintiff's counsel stated that he was willing that the objection be overruled for the present but that he wanted the objection in the record. Defendant's counsel asserted that there was no question but that the map or profile offered was a true copy of the original. Plaintiff's counsel answered that that was not the point of his objection and stated, "I will concede that it is there (the railroad's) blueprint but I say that does not aid." The court thereupon suggested that maybe they could stipulate that that was a true copy of the original blueprint of the right of way. Plaintiff's counsel then stated that he would stipulate that the blueprint is a true blueprint copy of the original plat of a proposed railroad. These objections and proceedings were made applicable to both maps. The court overruled the objections and the maps were admitted in evidence.

Plaintiff's counsel calls attention to NDRC 1943, 57–0505 which provides:

"Each railroad corporation doing business in this state shall file a map, within six months after location of its right-of-way, with the county auditor of each county in which such railroad or any part thereof may be located, showing: 1. The exact location of all rights-of-way and side tracks, showing on which

side of section and other lines its property is located in each assessment district in each county, owned or occupied by such railroad corporation; 2. The number of acres in each parcel of land included by such railroad corporation in such county as a right-of-way; and 3. A description of any other property owned by said corporation in each assessment district in such county. . . . Any railroad corporation which shall violate any of the provisions of this section shall be punished by a fine of not less than fifty dollars nor more than five hundred dollars and also shall be liable for the expense incurred as provided in section 57–0510 in procuring the information in any manner other than that provided in this chapter, to be collected in a civil action in the name of the state." NDRC 1943, 57–0505.

This section is part of the chapter relating to the assessment of railroad property and was obviously intended to furnish information to the officers charged with the duty of assessment of such properties which would be of value in making such assessments. The section has no application to the recording of maps or surveys of railroads for any other purpose and the failure of a railroad company to file a map or survey of its right of way in no manner affects the validity of a deed to the railroad company or the effect of such deed when it has been executed and recorded as prescribed by law for the execution and recording of conveyances of real property.

We are all agreed that it cannot be said that the description in the deed from Alfred Erickson and wife to the Great Northern Railway Company is so indefinite and uncertain as to render the deed a nullity.

In Corpus Juris Secundum (26 CJS Deeds, Sec 30, p 210 et seq) it is said:

*"In general any description in a conveyance of the property is sufficient if it identifies the property, or if it affords the means of identification, as by extrinsic evidence."*

"While it has been said that the function of a description of the property in conveyances is to identify the land covered by the conveyance, it is generally held that the office of a description is not to identify the land but to afford the means of identification, and when this is done it is sufficient.

"Generally, therefore, any description is sufficient by which the identity of the premises can be established, or which furnishes the means of identification. A conveyance is also good, if the description can be made certain within the terms of the instrument. The maxim, Id certum est quod certum reddi potest, applies. So, a description from which a surveyor can locate the land, or by which a party familiar with the locality is enabled to identify the premises intended to be conveyed with reasonable certainty, is sufficient. A deed will not be held void for uncertainty of description if by any reasonable construction it can be made available; a court will only declare a deed void for uncertainty of description when, after resorting to oral proof, it still remains mere matter of conjecture what was intended by the instrument."

In Jones' The Law of Real Property in Conveyancing (1 Jones, Sec 323, pp 268–269) it is said:

"The first requisite of an adequate description is that the land shall be identified with reasonable certainty, but the degree of certainty required is always qualified by the application of the rule that that is certain which can be made certain. A deed will not be declared void for uncertainty if it is possible, by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence, what property it was intended to convey. The office of a description is not to identify the land, but to furnish the means of identification. The description will be liberally construed to afford the basis of a valid grant. It is only when it remains a matter of conjecture what property was intended to be conveyed, after resorting to such extrinsic evidence as is admissible, that the deed will be held void for uncertainty in the description of parcels."

American Jurisprudence (16 Am Jur Deeds, Sec 262, pp 585–586) says:

"The courts are extremely liberal in construing descriptions of premises conveyed by deed with the view of determining whether those descriptions are sufficiently definite and certain to identify land and make the instrument operative as a conveyance. The purpose of a description of the land, which is the subject matter of a deed of conveyance, is to identify such

subject matter; and it may be laid down as a broad general principle that a deed will not be declared void for uncertainty in description if it is possible by any reasonable rules of construction to ascertain from the description; aided by extrinsic evidence, what property is intended to be conveyed. It is sufficient if the description in the deed or conveyance furnishes a means of identification of the land or by which the property conveyed can be located. In construing a doubtful description, the court will keep in mind the position of the contracting parties and the conditions under which they acted and interpret the language of the instrument in the light of these circumstances. As otherwise expressed, the description is sufficient if the reference to the property in the deed is such that the court, by pursuing an inquiry based upon the words of reference, is able to identify the particular property to the exclusion of all other property. The maxim is 'that is certain which can be made certain;' and the courts lean against striking down a deed for uncertainty of description of the land conveyed, and a liberal rule of construction will be applied to uphold the conveyance. So, if a surveyor with the deed before him can, with the aid of extrinsic evidence if necessary, locate the land and establish its boundaries, the description therein is sufficient."

In Devlin on the Law of Real Property and Deeds it is said:

"It is not essential to the validity of a deed that the description should be by boundaries, courses, or distances, or by reference to monuments. If the description is general, the particular subject matter to which the description applies may be ascertained by parol evidence, and the deed will not be held void for uncertainty, if, with the aid of such evidence, the land intended to be conveyed can be located." 2 Devlin on Deeds, pp 1918–1919.

"When a doubtful description is to be construed, the court should endeavor to assume the position of the parties, the circumstances of the transaction should be carefully considered, and in the light of those circumstances, the words should be read and interpreted." 2 Devlin on Deeds, p 1920.

Jones' Real Property and Conveyancing says:

"Where there is doubt or uncertainty arising from the terms of the description in a deed, or in the application thereof to the subject-matter, the court may place itself in the position of the grantee, and read it in the light of the circumstances under which it was executed, and may consider the condition of the property, state of the title, boundaries, or other material matters in aid of its interpretation." I Jones, Real Property, Sec 324, p 270.

"A deed should be construed with reference to the actual state of the land at the time of its execution. The court should as nearly as possible assume the position of the parties to the deed, and consider the circumstances of the transaction between them, and then read and interpret the words used in the light of these circumstances. A deed will not be held void for uncertainty so long as by reasonable intendment it can be ascertained what both parties understood to be embraced in the description." 1 Jones, Real Property, Sec 352, p 293.

In Washburn on Real Property it is said: "Facts existing at the time of the conveyance and prior thereto may be proved by parol evidence with the view of establishing a particular line as being the one contemplated by the parties, when, by the terms of the deed the line is left uncertain." 3 Washburn on Real Property, 6th ed, Sec 2320 p 385.

American Jurisprudence (28 Am Jur pp 1014–1015) says:

"As a general rule, a description of premises is deemed certain if it may be made certain, and extrinsic evidence is admissible for this purpose. It is only when the description of land is so inaccurate that its identity is wholly uncertain at the time of the execution of the conveyance that a grant or deed is void. Any other defect therein is considered latent, and may be explained by parol evidence, whether arising from facts independent of an attempted actual survey, or perceived only when the calls of the description are laid down upon the ground and found imperfect or conflicting. Thus, the true location of boundaries may be shown by parol evidence, under the well-established rule of law that such evidence is always admissible to apply a writing to its subject, and therefore to identify monu-

ments called for in descriptions of tracts of land contained in patents and deeds." 8 Am Jur, Boundaries, Sec 94, p 812.

Corpus Juris Secundum (32 C. J. S. Evidence, Sec 1007, pp 1014–1015) says:

"Parol or extrinsic evidence is usually admissible to identify, explain, or define the subject matter of a writing, or to apply the writing to its subject matter. However, the writing itself must contain a description sufficient to serve as a foundation for the admission of parol evidence and such evidence must be consistent with the writing.

"Parol evidence is always admissible where it is necessary in order to identify, explain, or define the subject matter of a grant, mortgage, contract, or other writing, or where it is necessary to apply the instrument or a description therein to its subject matter and to enable the court to execute it. Accordingly, where the subject matter of the writing is imperfectly described therein or the description is in some respects inaccurate, ambiguous, or very general in character, it is always competent to aid the description and identify the subject matter to which it is intended to apply and to apply the description to such subject matter by extrinsic evidence not inconsistent with what is written."

The deed from Alfred Erickson and wife to the Great Northern Railway Company was executed and acknowledged on March 1, 1913. It was filed for record in the office of the Register of Deeds in the county in which the land was situated on June 30, 1913, and there recorded in Book 50 of Deeds at page 19 thereof. The deed contained the usual covenants in a warranty deed. It contained covenants of seizin, quiet enjoyment, further assurance, general warranty, and against encumbrances. There were no limitations or conditions attached to the grant and the deed operated to convey to the Great Northern Railway Company a fee simple title. NDRC 1943, 47–1012. The premises conveyed were described in the deed as a strip or piece of land 150 feet wide, being 75 feet wide on the northerly side and 75 feet wide on the southerly side of the center line of the railway of said railway company, as the same is now located and established, and extending across from the east side to the

west side of the SW¼ of Section 29 in Township 163 North of Range 97 West containing 8.82 acres more or less. It must be presumed that the Ericksons intended to convey to the Great Northern Railway Company a specific tract of land 150 feet in width extending across from the east side to the west side of the SW¼ of Section 29 and containing 8.82 acres more or less.

It is clear that Alfred Erickson and wife sold and intended to convey to the Great Northern Railway Company a specific tract of land described in the deed. It was obviously the intention of Alfred Erickson and wife to execute and deliver a valid deed conveying the tract to the Great Northern Railway Company. The only factor not shown by the description set forth in the deed in order to furnish a full and definite description of the tract is the location of the center line of the railway of said Great Northern Railway Company extending across from the east side to the west side of the said SW¼ of Section 29, which said line is also the center line of the strip of land 150 feet in width, extending across from the east side to the west side of said SW¼ of Section 29. It is not possible from what is said in the deed to locate the exact place where such center line extends across said SW¼, and in order to locate such place or line it is necessary to resort to extrinsic evidence. There is no reason to doubt that Alfred Erickson and wife had in mind a specific tract of land which the deed purported to describe. There can be no reason to doubt that Alfred Erickson and wife intended to sell and the Great Northern Railway Company intended to purchase the specific tract which was decribed in the deed. The railway company paid for this tract a substantial consideration, namely $1000. Prior to the time the deed was executed the Great Northern Railway Company had caused a survey to be made of a line of railway extending across from the east side to the west side of said SW¼ of Section 29 and according to recitals on the blueprint of the survey introduced in evidence such survey commenced on September 26, 1912, and ended November 14, 1912, and a map or profile of such survey was authenticated by the verified statement of the Chief Engineer of the Great Northern Railway Company on January

8, 1913. This map or profile is denominated, "Located Line of the Great Northern Railway From Sec 29, Town 163 N., Range 97 W. to Sec 3, Town 161 N. Range 101 W. Sta 4686+00 to Sta 5954+00," and shows clearly and definitely the location of the center line of the railway as so surveyed and located, which extended across from the east side to the west side of said SW¼ of Section 29, Township 163 N., Range 97 W. The certificate executed by the President of the railway and attested by the Secretary of the company recites that the map has been prepared to be filed in order to obtain the benefits of the Act of Congress approved March 1, 1875, entitled "An Act granting to railroads the right of way through the public lands of the United States." Presumptively, the railway company took ordinary care of its own concern, the ordinary course of business was followed and the map was filed, and there is a notation on the blueprint that was offered in evidence that the map was approved by the Secretary of the Interior on May 29, 1914. Under the Act of Congress the location of the railroad would be definitely fixed by the filing of the map of the location and the approval thereof by the Secretary of the Interior, and the title to the right of way over public lands crossed by the railway located as shown by the map passed to the railway company on the date of the filing of the map of the definite location of the railroad. Jamestown & N. R. Co. v. Jones, 177 US 125, 44 L ed 698; Van Wyck v. Knevals, 106 US 360, 27 L ed 201; Kansas P. R. Co. v. Dunmeyer, 113 US 629, 28 L ed 1122.

The deed from Alfred Erickson and wife to the Great Northern Railway Company was directly in the line of title and the record thereof gave notice to all subsequent purchasers and encumbrancers that Alfred Erickson and wife had sold and conveyed to the Great Northern Railway Company a strip of land 150 feet in width extending across from the east side to the west side of said SW¼ of Section 29 and containing 8.82 acres more or less and that the center line of said strip of land, running east and west, was the center line of the railway of the Great Northern Railway Company, as the same was then located and established, and extending across from the east side to the west side of said SW¼ of Section 29. The description in the deed from

694

Alfred Erickson and wife to the Great Northern Railway Company was not erroneous but it was not sufficient to identfy the tract conveyed thereby without the aid of extrinsic evidence. The record, however, was sufficient to put a subsequent purchaser or encumbrancer on an inquiry which duly pursued would have disclosed the true facts and hence was notice of such facts as would have been disclosed by such inquiry. 45 Am Jur, Records and Recording Laws, Sec 127, pp 492–493. See, also, Roby v. Bismarck Natl. Bank, 4 ND 156, 162–163, 59 NW 719, 721.

The deed from Alfred Erickson and wife to Christ S. Semingson conveyed certain city lots and the said SW¼ of Section 29, except the "Great Northern Right of Way also a two acre tract in the north west corner of the quarter deeded to Tom T. Lee and two one acre tracts in the south east corner of the quarter, one tract sold to Albertina Kleinsmith and one to Bertha M. Feeney, and the whole of Erickson's addition to Crosby (Revised)."

The mortgage from Christ S. Semingson and wife to the State of North Dakota as mortgagee was executed on April 30, 1919, to secure the payment of $3000. The mortgage described the premises covered thereby as "all that tract or parcel of land lying and being in the County of Divide and State of North Dakota, and described as follows, to-wit: The Southwest Quarter (except deeded and platted parts) of Section Number Twenty-nine in Township Number One Hundred Sixty-three North, of Range Number Ninety-seven West of the Fifth Principal Meridian, containing 105.63 acres more or less according to the Government survey thereof." It will be noted that the mortgage did not purport to cover the whole of said SW¼ of Section 29. It specifically excepted all deeded and platted parts of said SW¼ and covered only 105.63 acres of the 160 acres contained in the quarter section. The deed does not show where such 105.63 acres are located in the quarter section or whether they are in one tract, and the deed does not give the description of the deeded and platted parts which are specifically excluded. In order to identify and locate the tract or tracts of land in the said SW¼ of Section 29 covered by the mortgage it will be necessary to resort to extrinsic evidence, to identify the same.

When Christ S. Semingson and wife on April 30, 1919, executed and delivered the mortgage to the plaintiff, an examination of the record and of the abstract of title would have disclosed the deed executed and delivered by Alfred Erickson and wife to the Great Northern Railway Company and the deed from Alfred Erickson and wife to Christ S. Semingson, in which latter deed there was expressly excepted from the property covered by such deed, "Great Northern Right of Way" and certain other tracts mentioned in the deed. It is common practice in the making of real estate loans to have an abstract of title to the land on which the mortgage is made and the evidence shows that at the time the plaintiff made the loan for $3000 to Christ S. Semingson and wife an abstract of title had been furnished or procured. The land commissioner when asked if they had an abstract of title answered, "I imagine we had. Yes, we must have, because we never make a loan unless we get one." Thereupon plaintiff's counsel stated, "the abstract was given to one of the banks here in town and never was returned. We haven't the Abstract that this loan was made on. We have a subsequent Abstract, but not the Abstract made at the time of the loan." The deed from Alfred Erickson and wife to the Great Northern Railway Company gave notice that Alfred Erickson and wife had sold and by such deed had conveyed to the Great Northern Railway Company, "a strip or piece of land, One Hundred and Fifty (150) feet wide, *being* Seventy-five Feet wide, on the Northerly side and Seventy Five feet wide on the Southerly side of the center line of the railway of said Railway Company, as the same is now (when the deed was executed) located and established, and extending Across from the East side to the West side of the Southwest quarter (SW$\frac{1}{4}$) of Section No. Twenty Nine (29) in Township No. One Hundred Sixty Three (163) North of Range No. Ninety Seven West. Containing Eight and eighty two One Hundredths (8.82) acres, more or less." And the deed from Alfred Erickson and wife to Christ S. Semingson gave notice that certain portions of the SW$\frac{1}{4}$ of Section 29 had previously been deeded. An inquiry from the Great Northern Railway Company would doubtless have produced information sufficient to identify and locate the

strip of land referred to and described in the deed from Alfred Erickson and wife to the Great Northern Railway Company as the railway company had available the profile or map of the survey of the railway across said SW¼ of Section 29, a blueprint of which survey was offered and received in evidence in this case and which blueprint would have disclosed the exact location of the strip of land in question.

In appellant's brief it is contended that the blueprint was irrelevant; that "it wholly fails to prove that any railroad was ever 'located and established' across this quarter section. Certainly merely drawing a plan of a proposed railroad which was admittedly never built is not sufficient to 'locate and establish' a railroad. Therefore, this plat was wholly irrelevant as proof of the location and establishment of a railroad as referred to in the original right-of-way deed from Erickson to the railway company. Therefore, it does not supply any deficiency in the description in the deed."

It was contended upon the trial and is the contention here that the reference in the deed from Erickson and wife to the railway company to the "center line of the railway of said railway company, as the same is now *located and established,* and extending across from the east side to the west side of the SW¼ of Section 29 in Township No. 163 North Range No. 97 West" must be understood as referring to a railway that had then been constructed; and that inasmuch as no railway had been constructed or ever was constructed it is not permitted to show the location of a railway that the railway company intended to construct and that had been surveyed as was shown by the blueprint. This contention is without merit. In the description in the deed the parties did not refer to the railway of said railway company as the same is now constructed or as the same is now located and established. They referred to "the center line of the railway of said railway company, as the same," that is, the center line of the railway of said railway company,—"is now located and established, and extending across from the east side to the west side of the SW¼," etc. The term "located" and the term "established" have various meanings. 54 C. J. S. pp 662–663; 30 C. J. S. pp 1229, 1232. The meaning of either the

word "locate" or "located" "depends on the connection in which it is used, the sense in which it is used by the parties, and the subject to which it is applied." The word "located" does not have reference to time but to place. 54 C. J. S. pp 662–663. To "locate" a highway or railroad that has not been constructed, generally has reference to the fixing of the line which the road is to occupy and the precise place where the road is to be built. Schwarting v. Carpenter, 157 Calif 432, 108 Pac 318; Kensington R. Co. v. Moore, 115 Md 36, 80 Atl 614–615, Ann Cas 1912C 1306; Warner v. Callender et al, 20 Ohio St. 190, 197; Turner et al v. Thornton and Mechanicsburg Gravel Road Co., 33 Ind 317, 319. See also Waldron v. Marcier, 82 Ill 550, 552; U. S. v. LaRoque, 198 Fed R at p 646; Fairbanks v. U. S., 223 US 215, 225, 56 L ed 409, 414. Funk & Wagnall's New Standard Dictionary of the English Language, among others, defines the word "locate" as follows: "3. (U.S.) To fix the future situation or course of by survey or otherwise; as, to *locate* a railroad, or the line of an interoceanic canal."

The words "establish" and "established" also have various meanings. "It has been said that on few words could there be more room for argument." 30 CJS p 1229. "In common language, the same word has various meanings and the peculiar sense in which it is used in any sentence is to be determined by the context." (Chief Justice Marshall in the Cherokee Nation v. Georgia, 5 Peters 1; 19, 8 L ed 25, 31.) The meaning of the word "establish" or of the word "established" depends on the connection in which the word is used, the subject to which it is applied and the circumstances in which it is used. As applied to a road or private way the word "established" has been held to mean "laid out." Baltimore & Ohio Ry. Co. v. Public Service Commission, 80 Pa Supr Ct 443, 445; City of Chester v. Baltimore P. R. R. Co., 140 Pa 275; Pa Sch V. R. R. v. Phila. & Read. R. R., 160 Pa 277; Watkins v. Country Club, 120 Ga 45, 47, 47 SE 538, 539; O'Neil v. Town of Walpole, 74 NH 197, 66 Atl 119. See, also, Dunstan v. Jamestown, 7 ND 1, 72 NW 899.

In construing a description that is ambiguous or doubtful so that it becomes necessary to resort to the aid of extrinsic evidence to identify and locate the property described in a deed the

court must keep in mind the position of the contracting parties and the conditions under which they acted at the time the deed was executed and the language of the instrument should be considered and construed in light of such circumstances. 16 Am Jur, Deeds, Sec 262, p 585; 2 Devlin on Deeds, p 1920; 1 Jones, Real Property, Sec 324, p 270. What was the position of the contracting parties and the conditions under which they acted at the time the deed from Alfred Erickson and wife to the Great Northern Railway Company was executed? Shortly before this deed was executed the railway company had caused a survey to be made of a railroad which the railway company contemplated constructing and which crossed the SW¼ of Section 29 then owned by Alfred Erickson. The survey had been completed and the chief engineer of the railway company had authenticated and verified a profile or map of such survey showing the line of such proposed railway across said SW¼ of Section 29. The map had been prepared to be filed "to obtain the benefits of the Act of Congress approved March 3, 1875 entitled 'An Act granting to railroads the right of way through public lands of the United States.'" The deed from Alfred Erickson and wife to the Great Northern Railway Company was executed on March 1, 1913. According to the certificate of the chief engineer of the railway company endorsed upon the said profile or map the survey of said line had been made, commencing September 26, 1912, and ending November 14, 1912, and the survey as delineated on such profile or map was authenticated and verified by the affidavit of the chief engineer of the railway company on January 8, 1913. There is no claim that there was any other line of railway located or surveyed across the said SW¼ of Section 29. It is a matter of common knowledge that in laying out a highway or a railway a survey is made and the center line is located and established as the base line. It is also a matter of common knowledge that when a line of railway is surveyed stakes are driven in the ground showing the location of the line. Presumptively, the line across the said SW¼ of Section 29 was so staked and there is no claim that it was not. The survey was made to ascertain and show the definite location of the line of the railway and under the Act of Congress the

location of the railroad would be definitely determined and fixed on the filing of the map of the location thereof and the approval by the Secretary of the Interior and the title to the right of way over public lands crossed by the railway located as shown by the map would pass to the railroad company on the date of the filing of such map. Jamestown and N. R. Co. v. Jones, supra; Van Wyck v. Knevals, supra; Kansas P. R. Co. v. Dunmeyer, supra. Manifestly, the route of a railroad must be designated and definitely located before the railroad can be constructed and ordinarily it is incumbent upon the railway company to obtain the right of way on which the railroad is to be constructed before the construction is made.

The term "located and established," in the deed from Erickson and wife to the Great Northern Railway Company was used by the parties in light of the conditions and circumstances then existing. In their description they did not refer to a railway now established and constructed "extending across from the east side to the west side of the SW¼ of Section 29." They referred to "the center line of the railway of said railway company, now located and established, and extending across from the east side to the west side of the southwest quarter," etc. At that time such center line had been definitely located and established by a survey which had been made by the railway company and authenticated and verified by its chief engineer. The center line of a railway which the railway company contemplated constructing had been ascertained and definitely located and established by such survey and a profile of such survey had been authenticated and verified by the chief engineer of the railway company and was shortly thereafter approved by the board of directors of the company. It is clear that the center line so surveyed and "located and established" is the one to which the parties referred in the deed from Erickson and wife to the railway company.

In Abercrombie v. Simmons, 71 Kans 538, 81 Pac 208, the Supreme Court of Kansas had occasion to consider a question of alleged invalidity of a deed because of the indefiniteness of the description of the land conveyed thereby. The deed involved in that case was made by Joseph Simmons to the Chicago, Kansas

and Western Railway Company. The deed described the property as "all the lands in the SW¼ of Section 15, Township 9 South of Range 7 West lying within 50 feet of the center line of the main track of said railroad and containing 6.23 acres, more or less." A week after the deed was executed and delivered "the railroad company made a map and profile of the route intended to be adopted, which was subsequently filed in the office of the county clerk. The railroad was never constructed, nor even graded over the Simmons land." The deed was attacked on the ground that the description was so indefinite as to render the deed a nullity. In the opinion in the case the court said:

"It is claimed that it was impossible to locate or identify the land from the description given; that the description of a part of a quarter section 'lying within 50 feet of the main track of the railroad' furnished no means of identification where in fact no railroad had been built. The agreed facts, however, show that, prior to the execution of the deed, the company contemplated the construction of a railroad over this land, and had actually surveyed and staked out a route and line. The map and profile of the route was in the course of preparation, and was completed a few days later, and this was the one which was filed with the county clerk. The company was negotiating for land upon which to construct and operate a railroad. It had marked out on the face of the land the line or track which it proposed to build. The owner sold it to the company for that purpose, and obviously both parties contracted with reference to these facts. In construing a doubtful description in a conveyance, the court must keep in mind the position of the contracting parties, the circumstances under which they acted, and interpret the language of the instrument in the light of these circumstances. When so construed, we may fairly say that, as the only way of locating the strip was by a resort to the line which had been surveyed and staked out by the company as the statute authorized, the parties contracted with reference to this survey, and it may be looked to as a part of the description. Under the principle that that will be considered certain which can be made certain, we can look not

only to the survey, but also to the map and profile made by the company." 71 Kans at pp. 540–541, 81 Pac at p. 209.

The deed from Alfred Erickson and wife to the Great Northern Railway Company was not a nullity. It conveyed a tract of land 150 feet in width extending from the east side to the west side of the SW¼ of Section 29, Township 163 North, Range 97 West, in Divide County containing 8.82 acres more or less. According to the description in the deed the center line of such tract of land, running east and west, was the center line of the railway of the Great Northern Railway Company, as the same was then (when the deed was executed) located and established, and extending across from the east side to the west side of the SW¼ of Section 29, Township 163 North, Range 97 West, in Divide County. The only fact to be ascertained in order to locate and fix the exact boundaries of the 8.82 acre tract of land designated in the deed, in addition to and explanatory of what is said in the deed, is the location of the center line of the railway, (referred to in the deed), extending across from the east side to the west side of the said Southwest quarter of Section 29, as such center line was located and established when the deed was executed. Clearly there was a sufficient description in the deed to afford a basis for admitting extrinsic evidence to ascertain the intention of the parties as expressed by the words employed in the deed to describe the land and to identify the land and the boundaries thereof. The extrinsic evidence adduced in this case does not contradict or vary the deed. It leaves the description as stated in the deed and merely locates the center line of the railway of the Great Northern Railway Company, referred to in the deed, extending across from the east side to the west side of the SW¼ of said Section 29 as the same had been located and established when the deed from Erickson and wife to the Great Northern Railway Company was executed and delivered, and which said center line was also the center line of the said 8.82 acre tract described in such deed. In our opinion the evidence adduced in this case establishes beyond any doubt the identity and the location of the tract of land described in the deed. It establishes further that such 8.82 acre tract of land was conveyed by the deed from Alfred Erickson and wife

to the Great Northern Railway Company and thus segregated from the portion of the SW¼ of said Section 29 which Alfred Erickson owned at the time the deed from Erickson and wife to the Great Northern Railway Company was executed and delivered; and that when Semingson later purchased from Alfred Erickson and wife land in said SW¼ of Section 29 it was the intention of the parties that the said 8.82 acre tract should be and it was specifically excepted from the lands described in such deed which Alfred Erickson and wife executed and delivered to Semingson in December 1914 and such tract was also excepted from the lands covered by the mortgage which Semingson and wife executed and delivered to the plaintiff and from the sheriff's deed which the plaintiff received upon the foreclosure of the mortgage. We are all agreed that the plaintiff had no estate or interest in, or lien upon said 8.82 acre tract.

It is also contended by the plaintiff that the title acquired by Christ S. Semingson to the 8.82 acre tract by the deed to him from the Dakota and Great Northern Townsite Company inured to the benefit of the plaintiff under the mortgage from Semingson and that the title to such tract passed to the plaintiff upon the foreclosure of the mortgage. This contention is without merit. The 8.82 acre tract was segregated by Erickson and wife from the remainder of the land he then owned in the SW¼ of Section 29 by the deed which they executed and delivered to the Great Northern Railway Company. When Alfred Erickson and wife in December 1914 conveyed to Semingson certain lands in the SW¼ of said Section 29 they, by recital in the deed, specifically excepted all tracts of land in the said SW¼ of Section 29 which they had previously deeded and this, of course, included the 8.82 acre tract. Semingson apparently had no illusions on the subject. He knew that he was not the owner of the said 8.82 acre tract which Erickson and wife had conveyed to the Great Northern Railway Company and Semingson purchased the 8.82 acre tract from the Dakota and Great Northern Townsite Company the then record owner and paid a substantial consideration therefor. This purchase was made long after Semingson and wife had executed and delivered the mortgage to the plaintiff. The fact that Semingson subsequently purchased the 8.82 acre

tract obviously did not operate to include that tract in the land covered by the mortgage which Semingson and wife had executed and delivered to the plaintiff. That mortgage was restricted to and covered only the land in the SW$\frac{1}{4}$ of Section 29 which Semingson owned when he and his wife executed and delivered the mortgage to the plaintiff.

Plaintiff contends, also, that it had possession of the 8.82 acre tract and hence was presumed to be the owner thereof. It is true that possession of land may give rise to a presumption of ownership but such presumption is rebuttable. In this case we are not concerned with a presumption resulting from alleged possession, as the facts with respect to the ownership of the 8.82 acre tract are fully shown by evidence which demonstrates that the plaintiff does not have, and never has had, any title to or interest in the said 8.82 acre tract. Hence, plaintiff had no constructive possession of the tract as constructive possession is a legal presumption which follows and rests upon a title. 50 CJ p. 781, Sec 56; 42 Am Jur, Property p. 220, Sec. 43. The evidence does not show that plaintiff had actual possession of the tract. The mortgage from Semingson and wife to the plaintiff covered only a portion of the SW$\frac{1}{4}$ of said Section 29. It covered only such portion thereof as had not theretofore been deeded and platted when the mortgage was executed. The sheriff's deed upon which plaintiff's claim of ownership is predicated did not cover the whole of said SW$\frac{1}{4}$ of Section 29. It covered only "The Southwest Quarter (except deeded and platted parts) of Section Number Twenty-nine, in Township Number One Hundred Sixty-three North, of Range Number Ninety-seven West of the Fifth Principal Meridian, containing 105.63 acres more or less according to the Government survey thereof." In other words, it purported to convey only 105.63 acres, more or less, of the 160 acres contained in the SW$\frac{1}{4}$ of Section 29. The only evidence of any act of dominion by the plaintiff over any land in the SW$\frac{1}{4}$ of said Section 29 are certain written leases which the plaintiff executed to diverse parties beginning with the year 1927 and continuing up to and including the year 1947 and a contract for sale of land which the plaintiff executed in

March 1946. In the lease for the years 1927, 1928 and 1929 the premises leased are described as 80 acres cultivated and 25.63 acres uncultivated land in the SW¼ of said Section 29. In the lease for the years 1930 and 1931 the premises leased are described as "Fractional SW¼ of Section 29–163–97." In the leases for the years 1932, 1933, 1934, 1935, 1936, 1937 and 1938 and in the leases for the years 1940, 1941, 1942, 1944, 1945, 1946 and 1947 the premises are described as "Part of SW¼ of Section 29–163–97." There is no further description in any of the leases as to the land leased. The leases did not purport to point out with any particularity where the land leased was located in the SW¼ of Section 29. The purposes for which the land was used, if any, and what parts, if any, were used are not shown.

In the contract for the sale of the land the premises are described as the SW¼ of Section 29, Township 163 North of Range 97 West, except part deeded and platted, and containing 101.64 acres, more or less. There is no description of the part or parts deeded, or of the part or parts platted, there is no statement as to their location; and there is no description of the 101.64 acres covered by the contract, and no statement as to where such 101.64 acres are located within said SW¼ of Section 29. The evidence does not show that the plaintiff had actual possession of the 8.82 acre tract, or that it had any authority to enter into possession of or exercise any dominion over the same; but the evidence establishes to a certainty that the plaintiff had no title to or interest in such 8.82 acre tract.

Plaintiff further contends that the tax deed to Divide County was void; that the county acquired no title by virtue thereof and that consequently the deed by the county to the defendant Rosenquist did not convey to her any title to or interest in the land. The defendants contend that inasmuch as the evidence establishes that the plaintiff had no title to or interest in, or lien or encumbrance upon the tract of land in question the plaintiff is in no position to attack the tax deed or any interest conveyed or purported to be conveyed to the defendant Rosenquist by the deed from the county. The trial court sustained such contention of the defendants and we are agreed that the trial court was correct in so holding. Under our statute an ac-

tion to determine adverse claims to real estate "may be maintained by any person having an estate or an interest in, or lien or encumbrance upon, real property, . . . against any person claiming an estate or interest in, or lien or encumbrance upon, the same, for the purpose of determining such adverse estate, interest, lien or encumbrance." NDRC 1943, 32–1701. Under the express terms of the statute it is only a person who has "an estate or an interest in, or lien or encumbrance upon real property" who may maintain an action to determine adverse claims thereto. It follows that a person who has no estate or interest in, or lien or encumbrance upon the real property may not maintain an action to determine adverse claims thereto. Unless the complaint in such action alleges that the plaintiff has an estate or interest or lien or encumbrance upon the real property involved in the action it fails to state a cause of action. If the complaint does so allege and the evidence adduced upon the trial shows that the plaintiff has no such estate or interest in or lien or encumbrance upon the real property his action fails. If the defendant defaults and fails to appear or answer it is still incumbent upon the plaintiff to prove that he has such estate or interest in, or lien or encumbrance upon, the premises as is alleged in his complaint and if he fails to establish that he has any estate or interest in, or lien or encumbrance upon, the premises it is the duty of the trial court to hold that he has failed to establish a cause of action. Murphy et al v. Missouri & K. Land and Loan Co., 28 ND 519, 531, 149 NW 957, 961. If, in an action to determine adverse claims, it is shown that the plaintiff has no estate or interest in or lien or encumbrance upon the land whatsoever and there is only one defendant and he denies plaintiff's title and interposes a counterclaim, then plaintiff is in no position to assail the title or interest set forth in the counterclaim and to insist that the trial court must try and determine the validity of the title or interest asserted by the defendant. The existence of a justiciable controversy between parties having adverse legal interests is essential to present a question for judicial determination, and where in an action to determine adverse claims the evidence

shows that the plaintiff has no interest or estate in, or lien or encumbrance, upon the land, or any legal interest in any matter involved in or dependent upon the ownership of the land, then the plaintiff is in no position to attack the validity of the estate or interest asserted by the defendant. In such case the determination by the court that the plaintiff has no estate or interest in or lien or encumbrance upon the land and hence no right to maintain the action is a complete and effective determination of plaintiff's rights and the plaintiff is not concerned with and has no legal interest in whatever determination the court may make with respect to the estate or interest claimed by the defendant. However, in an action to determine adverse claims, there may be a number of defendants and there may be justiciable controversy between codefendants, and the fact that it is established that the plaintiff has no standing as a plaintiff and has no right to maintain the action does not deprive the court of jurisdiction to try justiciable issues that have been raised between the codefendants. Thus in this case, if Semingson had been made a party defendant and he had appeared and asserted that he was the owner of the land and that the tax deed under which the defendant Rosenquist claimed title was invalid, such issue would have been triable notwithstanding plaintiff was shown to have no right to maintain the action. It is the settled law in this state that a plaintiff in an action to determine adverse claims must recover, if at all, on the strength of his own title and not on the weakness of the title of his adversary. Conrad v. Adler, 13 ND 199, 100 NW 722; Brown v. Comonow et al, 17 ND 84, 114 NW 728; D. S. B. Johnston Land Co. v. Mitchell et al, 29 ND 510, 151 NW 23; O'Leary v. Schoenfeld, 30 ND 374, 152 NW 679; Nord v. Nord, 68 ND 560, 282 NW 507; Shuck v. Shuck, (ND), 44 NW2d 767; Co. A First Regiment National Guard Training School v. State, 58 ND 66, 224 NW 661.

The evidence in this case shows without dispute that Semingson became the owner of the 8.82 acre tract by virtue of a deed executed and delivered to him by the Dakota and Great Northern Townsite Company, the then owner and holder of the record title to said 8.82 acre tract. There is no contention and no

showing that Semingson at any time has conveyed or encumbered the 8.82 acre tract to anyone. According to the evidence Semingson has been the record owner of the legal title to such tract of land at all times since June 18, 1926, when the deed which had been executed and delivered to him by the Dakota and Great Northern Townsite Company was filed for record in the office of the Register of Deeds of Divide County, and recorded in Book 31 of Deeds at page 340 thereof. Semingson continued to be such record owner, and was such owner when the tax deed for the tract was executed and delivered to Divide County. The evidence shows that when the notice of expiration of the period of redemption in the proceeding for the tax deed was issued by the county auditor of Divide County it was addressed to Christ Semingson as the record owner of said tract and the notice was served on him by registered mail as prescribed by law. According to the record presented here Semingson is the only person whose interest would be affected by an adjudication as to the validity of the tax deed. Such tax deed, if valid, operated to cut off Semingson's title and rights in the land and to vest a fee simple title thereto in Divide County. But Semingson is not a party to this action. A determination here with respect to the validity of the tax deed would not be binding upon Semingson or upon any party who might claim under him. As has been pointed out, the plaintiff has no interest whatever in the land and hence is not a real party in interest. It has no interest entitling it to maintain the action and hence is in no position to attack the estate or interest therein asserted by the defendant Rosenquist. Dever v. Cornwell, 10 ND 123, 86 NW 227; Herrick v. Churchill et al, 35 Minn 318, 29 NW 129; Flisrand v. Madson et al, 35 SD 457, 471, 152 NW 796. See, also, Cranmer v. Howard et al, 45 SD 218, 220, 183 NW 124.

"For a standing as party plaintiff it is necessary . . . that this person have in the cause of action asserted, a remedial interest which the law of the forum can recognize and enforce. It is a rule of universal acceptation that to entitle any person to maintain an action in court it must be shown that he has a justiciable interest in the subject matter in litigation, either in his own right or in a representative capacity. . . . It is re-

garded as fundamental that no person may maintain an action respecting a subject matter, in respect of which he has no interest, right, or duty, either personal or fiduciary." 47 CJ pp. 21–22. (67 CJS p. 898 et seq.). See, also, Langer v. State, 69 ND 129, 141–142, 284 NW 245.

"One cannot rightfully invoke the jurisdiction of the court to enforce private rights or maintain a civil action for the enforcement of such rights unless he has in an individual or representative capacity some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy." 39 Am Jur, Parties, Sec. 10, p. 860.

In Minnesota the statute providing for an action to determine adverse claims said: "Any person having or claiming title to vacant or unoccupied real estate may bring an action against any person claiming an estate or interest therein adverse to him, for the purpose of determining such adverse claim, and the rights of the parties respectively."

. In Herrick v. Churchill et al, supra, the Supreme Court of Minnesota had occasion to construe such statute. In the opinion in that case the court, speaking through Judge Mitchell said:

"The complaint alleges that the plaintiff 'claims title in fee-simple,' but contains no allegation that he has, in fact, any title to, or interest in, the premises. The answer admits that plaintiff 'claims title,' but alleges, as we construe the pleading, that he has no title or interest in the premises; and there sets up, or attempts to set up, title in the defendants. Upon the trial plaintiff rested, without offering any evidence, whereupon the referee, on motion of defendant, dismissed the action. This is assigned as error.

"The contention of plaintiff, plainly stated, is that, under the literal wording of this statute, any person who says that he claims title, without either alleging or proving that he has in fact any title to, or interest in, the real estate, may maintain an action against any other person who claims an interest in it, and compel him to prove his title, or be adjudged to have none. If the statute means this, it certainly establishes a most unreasonable and anomalous rule. We think it was never before heard of, in judicial proceedings, that one person, who has no interest what-

ever in property, may maintain an action against another who claims some interest in it, and compel him to prove the validity of his claim. We do not think the statute was intended to establish any such rule."

The Court further said: "the plaintiff must allege, and, if denied, prove, some title or interest in himself. He must 'claim' title in his complaint, and this he must do by alleging title. As was said in Myrick v. Comsalle, 32 Minn 153; SC 19 NW Rep 736: 'The plaintiff must allege in his complaint, and, in case of contest, show upon the trial, some title to the land; otherwise he does not put himself in a position to attack the claim of any other person to the same.'" (35 Minn 319-320, 29 NW 129).

In Dever v. Cornwell, supra, this court said: "Certain evidence was introduced under objection to show that the defendant Cornwell was and is the owner of the land. Plaintiff's counsel contend that for certain technical reasons such evidence was incompetent. But we are of the opinion that plaintiff, under the evidence, has not only signally failed to sustain his allegations of ownership and title, but has also failed to show any estate in, title to, or possession of the land involved. Under the evidence the plaintiff has no title or interest in the land, and having failed either to allege or prove possession of the land, the plaintiff cannot maintain this action. Jellison v. Halloran, 40 Minn 485, 42 NW 392; Herrick v. Churchill, 35 Minn 318, 25 NW 129; Myrick v. Comsalle, 32 Minn 153, 19 NW 736; Merrill v. Dearing, 47 Minn 137, 49 NW 693; Wheeler v. Paper Mills, 62 Minn 429, 64 NW 920. The cases cited from Minnesota were all statutory actions to quiet title. In Merrill v. Dearing the Court lays down the rule that, where the complainant alleged ownership in fee in the plaintiff, he would not be permitted to show an equitable interest only in the land. In Stuart v. Lowry, (Minn) 51 NW 662, this rule was applied to a defendant. In Myrick v. Comsalle the Court said: 'The plaintiff must allege in his complaint, and, in case of contest, show upon the trial, some title to the land; otherwise, he does not put himself in a position to attack the claim of any other person to the same.' In Wakefield v. Day, 41 Minn 344, 43 NW 71, the Court, referring to

the burden resting on the plaintiff in this class of actions, said: 'It was necessary for him to prove the title or interest claimed by him, in order to maintain his action.' Under these authorities the plaintiff was not in a position to call upon the defendants to show at the trial that their title to the land was a good title, and all evidence introduced at the trial to vindicate the defendant's title was therefore superfluous. As against the plaintiff, the defendants were entitled to have their title quieted at least to the extent of an adjudication that the plaintiff had no title to or interest in the land as against the defendants." (10 ND at p. 131, 86 NW at p. 231.)

In Myrick v. Comsalle, supra, the Supreme Court of Minnesota said: "In the present action, . . . the only finding in reference to any title of plaintiff is that a guardian of certain minors, 'having been licensed to sell all the land in dispute in this case' by a probate court, etc., 'did sell to the plaintiff . . . all the lands described in the pleadings.' It does not appear that plaintiff paid anything upon the purchase, or that the sale was legal, or that it was confirmed, or that any guardian's deed was executed. It follows that there is not only a failure to show the title in fee-simple, which plaintiff pleads in her complaint, but an utter failure to show any title or interest whatever, legal or equitable. Her action, therefore, fails as a matter of course. Such being the case, we are unable to perceive how she is prejudiced by the judgment (whether regular or not) which declares the defendant Matilda Shillock owner in fee of a part of the property in dispute, and Engerud owner in fee of the remainder. So long as plaintiff has no interest in the property, who is adjudged to be its owner is of no importance to her in this action." (32 Minn at p. 154, 19 NW 736).

What was said by the Supreme Court of Minnesota in Herrick v. Churchill et al, supra, and in Myrick v. Comsalle, supra, and by this court in Dever v. Cornwell, supra, is quite applicable here. The plaintiff does not have, and never has had, any title to, or any estate or interest in, or any lien or encumbrance upon, the 8.82 acre tract. The County of Divide received a tax deed for such tract, and later conveyed all its title, right and interest in such tract to the defendant Rosenquist. McDonald v. Abra-

ham, 75 ND 457, 465, 28 NW2d 582, 586. The plaintiff is in no position to challenge the validity of the tax deed to the county or of the deed from the county to the defendant. The plaintiff is not the real party in interest in any controversy as to the validity of such deeds.

The judgment rendered in this case is substantially the same as that which was rendered under similar or analogous circumstances, and approved by this court, in Dever v. Cornwell, supra.

The judgment appealed from is affirmed.

Morris, Ch. J., and Grimson and Burke, JJ., concur.

Sathre, J., did not participate.