HARRIS, C., Senior Judge.
Romeo and Susan Serdari operated a pizza restaurant and were supplied by Roma. After the Serdaris ran up a large account with Roma, they executed an instrument acknowledging a debt of some $60,000 and agreed that said debt would be payable “upon the sale” of specifically described property. This instrument, called a “mortgage,” was recorded in the records of Volusia County. One of the parcels described in said “mortgage” was subsequently conveyed but apparently the proceeds were not paid to Roma. Sometime thereafter, the parcel came into the hands of the Secretary of Veterans Affairs through the foreclosure of a mortgage given by a successor in interest of the Serdaris. The “mortgage” given to Roma, although recorded in the public records, apparently went unnoticed in the Serdaris’ chain of title. When Roma became aware that title to property described in its “mortgage” had transferred without the proceeds from the sale being applied to its debt, it filed a foreclosure action against the real property described in the instrument and prevailed below. We reverse.
Certainly, the Secretary is deemed to have notice of the recorded instrument. But the extent of its notice is defined by the contents of the recorded instrument and such information that further inquiry might reveal if the recorded instrument indicates such further inquiry is necessary. Tri-County Produce Distribs., Inc. v. Northeast Credit Ass’n, 160 So.2d 46 (Fla. *1067 1st DCA 1963); State v. Rosenquist, 78 N.D. 671, 51 N.W.2d 767 (1952); Wiseman v. Watters, 107 Tex. 96, 174 S.W. 815 (1915). The recorded instrument in this case is simply not a mortgage on real estate and no further inquiry would make it such. The instrument is in the nature of an assignment of proceeds from the sale of specifically described property. Under the terms of the instrument, the real estate could never be subject to foreclosure. The debt does not even become payable until the property is conveyed. Therefore, before sale by the Serdaris, the property is not subject to foreclosure; after the sale, the title to the property has been conveyed to one who does not owe the debt. The property itself was never, according to the terms of the recorded instrument and according to the testimony of Roma’s agent at trial, intended to secure the debt.[1] The clear intent of the instrument is to pledge the proceeds of sale to the payment of the debt. In that sense, the instrument is a “mortgage” but not a mortgage on real estate. For example, suppose the Serdaris had received an offer for a piece of the property which was for less that the debt to Roma but acceptable to them. Could Roma have prevented the sale by refusing to release its hen? Not according to the instrument. Suppose the Serdaris had received an offer much greater than the debt but not enough for them to agree to the sale. Could Roma insist on the sale at the risk of foreclosure? Not according to the terms of the instrument. The real estate itself was not part of Roma’s security; its sale merely established the due date of the debt and provided the funds to apply toward the debt.
Roma urges that since the parties intended that the instrument be a mortgage on real estate, it should be construed to be a mortgage on real estate. Although there was evidence that the parties intended that the instrument secure the debt, there was no evidence that the parties intended that the real estate, as opposed to the proceeds from the sale of the real estate, secure the debt. Further, this instrument is fish (a lien on the proceeds) and not fowl (a lien on the real estate), and wishing it was something else or testifying that the real intent was different than that expressed in the instrument simply cannot change the nature of the beast. This clear intent expressed in the instrument that it was the proceeds of the sale, and not the real property itself, which stood as security for the debt cannot be altered by parol evidence. If the instrument misspoke, then reformation would be the remedy.
REVERSED.
PETERSON, J., concurs.
PLEUS, J., concurs and concurs specially with opinion.

. When asked to explain the events leading up to the execution of the "mortgage,” the agent testified:
"They [the Serdaris] said that they had a piece of property that they were trying to sell and they would — from the proceeds of the sale of this property they would pay off the past-due balance.
... [W]hen they did sell this piece of property that Roma Foods would then be paid this past-due balance.”