2001 ND 104

Steve JORGENSON; Ed Loraas; Jeff Nitschke; Kevin Alexander; Roger Amble; David Baldson; Joe Bata; Jared Benson; Rick Benson; Rodger Benson; Don Berge; Lowell Berntson; Neal Berntson; Darrel Biby; Lane Bina; Arvid and John Boe, dba Boe Farms; Arlen Bonde; C–C Seil Farm, Inc.; Jim Cook; Dennis Crockett; Darryl Dahl; Keith and Ted Dahl; Allan and Randy Darling; Tim DuBois; Gerald Eberle; Greg Entzminger; Todd Erickstad; Bill and Mike Follman; Ken Forest, dba Forest Farms, Jack Formo, dba Formo Farms; Doug Freije; Malior Gette; Mark Glinz; Alan Goeser; Loren Goeser; Owen Goeser; Roger Gorder; Don and Kent Gussiaas, dba Gussiaas Bros.; Lorin Haagenson; Dennis Hagel; Jerome and Mark Hagemeister; Ron Hegvik; Randy Helle; Rio Himle, dba H & H Farms, Inc.; Ronald Hoffarth; Jim Hofstrand; Scott Howatt; Tim Indergaard; Gerald Jaeger; Jeff Jensen; Dean Johnson; Donald Jonasson, dba Jonasson Farms; Curt Kenner; Susan Kjelland; Gene Kruk; James R. Kutz; Gene Larson, dba G & L Farms; Larry Larson; Robert Linderman; Mitchell Lloyd, dba Lloyd Crop Mgmt., Inc.; Larry Lura; Mitch Lura; Randy Lura; Richard Lynne; Brad McIntosh; Tom Marcotte; Kevin Matejcek; Jim Neumiller; Jon Nitschke; Kenneth Nitschke; Mark Novak; Lee Osowski, dba Evergreen Farms; Brad Paulson; Dale Pesek; Doug Plummer; Jon Polries; Roger Rance; Jerry Rollness; John Rueger; Dale and Kevin Samuelson; Mark Schneider; Jack Skjervheim, dba Skjervheim Farms; Dale and Jim Sondeland, dba Sondeland Bros.; Jeff Stevens; Larry and Tom Tarang, dba Tarang Farms; Rick Tofsrud; Larry Treleaven; Eldon Troftgruben; and Robin Weisz, Plaintiffs,

v.

AGWAY, INC., Defendant.

No. 20000300.

Supreme Court of North Dakota.

May 25, 2001.

Sarah M. Vogel (argued), Damian J. Huettl (appeared), and Andrew F. Nilles (appeared), Wheeler Wolf, Bismarck, for plaintiffs.

Duane R. Breitling (argued), Ohnstad Twichell, P.C., Fargo, for defendant.

Steven E. McCullough (on brief), Ohnstad Twichell, P.C., West Fargo, for defendant.

Douglas A. Bahr, Reid A. Brady, David W. Huey, Assistant Attorneys General, Attorney General's Office, Bismarck, for Amicus Curiae State of North Dakota.

VANDE WALLE, Chief Justice.

[¶ 1] Under N.D.R.App.P. 47, the United Sates District Court for the District of North Dakota certified the following question of law to this Court:

Whether North Dakota's Consumer Fraud Act, N.D. Cent.Code Chapter 51–15, may apply to a transaction in which a farmer, who purchased confection sunflower seed for use in cultivating a sunflower crop for subsequent sale, alleges the seed is defective and claims it was marketed and sold in violation of the Act[?]

We conclude N.D.C.C. ch. 51–15 clearly and unambiguously applies to the farmer plaintiffs' claims, and we answer the certified question yes.

[¶ 2] The District Court's certification order recited the following facts for consideration with the certified question:

1. Plaintiffs are 90 farmers who bought and planted Agway Royal Hybrid 2073 confection sunflower seed for purposes of cultivation during the 1999 crop year.

2. Plaintiffs have sued Agway under four theories, alleging certain defects in the seed.

3. The four theories advanced by plaintiffs are:

(1) Violation of the deceptive practices provisions of the North Dakota Consumer Fraud Act;

(2) Violation of the false advertising provisions of the North Dakota Consumer Fraud Act;

(3) Breach of implied warranties of merchantability and of fitness for a particular purpose under North Dakota's Uniform Commercial Code; and

(4) Breach of express warranties under North Dakota's Uniform Commercial Code.

4. A copy of plaintiffs' Complaint is attached hereto as Exhibit 1.

5. The defendant moved to dismiss counts one and two pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the North Dakota Consumer Fraud Act did not apply, as a matter of law, to the transactions at issue. Plaintiffs resist the motion.

[¶ 3] The plaintiffs' complaint alleges Agway made knowing and deceptive misrepresentations about Royal Hybrid 2073

confection sunflower seed by promoting it as a superior seed with 85 percent or better germination rate, improved plant health, and improved yield. The plaintiffs allege Agway's misrepresentations constituted consumer fraud and false advertising under N.D.C.C. ch. 51–15.

[¶ 4] The plaintiffs argue N.D.C.C. ch. 51–15 authorizes them to sue Agway for the alleged misrepresentations, because sunflower seeds are "merchandise" and farmers are "persons" who may sue under that chapter. Relying on *Ly v. Nystrom*, 615 N.W.2d 302 (Minn.2000), Agway argues N.D.C.C. ch. 51–15 only applies to consumer transactions. Agway defines "consumer" as one who "acquires goods or services for direct use or ownership, rather than for resale or use in production or manufacturing." Agway argues the transactions alleged in the plaintiffs' complaint are "mercantile" in nature and not consumer transactions, because the plaintiffs purchased the sunflower seeds for production and their alleged damages were incurred in their farming operations. Agway argues the "sum and substance" of the plaintiffs' complaint "is that some 90 farmer-merchants purchased from a seed supplier-merchant seed to use on the farms, to produce other seeds for resale." Agway claims these "transactions were production-oriented and not consumer-oriented."

[¶ 5] Resolution of this issue requires interpretation of N.D.C.C. ch. 51–15. The interpretation of a statute is a question of law. *E.g., Buchholz v. City of Oriska*, 2000 ND 115, ¶ 2, 611 N.W.2d 886. The primary purpose of statutory construction is to ascertain legislative intent. *E.g., Douville v. Pembina County Water Res. Dist.*, 2000 ND 124, ¶ 9, 612 N.W.2d 270. In ascertaining legislative intent, we look first at the words used in the statute, and we give those words their plain, ordinary, and commonly understood meaning

unless they are defined by statute. N.D.C.C. § 1–02–02; *Kim–Go v. J.P. Furlong Enters., Inc.*, 460 N.W.2d 694, 696 (N.D.1990). When a statute is clear and unambiguous on its face, we will not disregard the letter of the statute under the pretext of pursuing its spirit, because legislative intent is presumed clear from the face of the statute. N.D.C.C. § 1–02–05; *Douville*, at ¶ 9. A statute is ambiguous when it is susceptible to differing, but rational, meanings. *Buchholz*, at ¶ 2.

[¶ 6] Section 51–15–02, N.D.C.C., defines an unlawful practice as the use of any deceptive act, fraud, false promise, or misrepresentation in connection with the sale or advertisement of any "merchandise":

> The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice.

Section 51–15–09, N.D.C.C., does not preclude an action by "any person against any person who has acquired any moneys or property by means of any" unlawful practice, and provides:

> The provisions of this chapter do not bar any claim for relief by any person against any person who has acquired any moneys or property by means of any practice declared to be unlawful in this chapter. If the court finds the defendant knowingly committed the conduct, the court may order that the person commencing the action recover up to three times the actual damages proven and the court must order that the person commencing the action recover costs, disbursements, and actual reason-

able attorney's fees incurred in the action.

[¶ 7] "Merchandise" is defined in N.D.C.C. § 51–15–01(3) as "any objects, wares, goods, commodities, intangibles, real estate, or services." Under N.D.C.C. § 51–15–01(4), "person" means "any natural person or the person's legal representative, partnership, corporation, limited liability company, company, trust, business entity, or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee, or cestui que trust thereof."

[¶ 8] Although N.D.C.C. ch. 51–15 is entitled "consumer fraud and unlawful credit practices," the word "consumer" does not otherwise appear in the text of N.D.C.C. ch. 51–15. Headnotes describing the title of a chapter of the code do not constitute any part of the statute and may not be used to determine legislative intent. N.D.C.C. § 1–02–12. *See Mees v. Ereth,* 492 N.W.2d 72, 75 (N.D.1992). Instead, we look to the statutory language used in N.D.C.C. ch. 51–15. The plain and unambiguous language of N.D.C.C. § 51–15–02, prohibits an "unlawful practice" in connection with the sale or advertisement of any "merchandise," which is broadly defined in N.D.C.C. § 51–15–01(3) as "any objects, wares, goods, commodities, intangibles, real estate, or services." The definition of

merchandise is broad enough to include confection sunflower seeds. Moreover, the clear and unambiguous language of N.D.C.C. § 51–15–09, does not preclude an action by "any person against any person who has acquired any moneys or property by means of any practice declared to be unlawful" under N.D.C.C. § 51–15–02. The broad definition of "person" includes "any natural person" or other business entity, *see* N.D.C.C. § 51–15–01(4) and "person" is not necessarily limited to "consumer" or "consumer transactions" as defined by Agway. The plain and unambiguous definition of person belies a legislative intent to limit the provisions that do not preclude an action by any person in N.D.C.C. § 51–15–09 to consumer transactions as defined by Agway.[1] The plain and unambiguous definition of "person" manifests a legislative intent that N.D.C.C. ch. 51–15 applies to a farmer who purchases confection sunflower seeds for use in cultivating a sunflower crop for subsequent sale, and who alleges the seed was marketed and sold in violation of N.D.C.C. ch. 51–15.[2]

[¶ 9] We therefore hold N.D.C.C. ch. 51–15 applies to the plaintiffs' action, and we answer yes to the question certified by the United States District Court.

1. In *Ly* 615 N.W.2d at 308, the Minnesota Supreme Court recognized the word "consumer" did not appear in the Minnesota Consumer Fraud Act, but said the Act's purpose of protecting consumers was clear from its inception. The court said the Minnesota Consumer Fraud Act is remedial and should be liberally construed in favor of protecting consumers. *Id. See also State ex rel. Spaeth v. Eddy Furniture Co.,* 386 N.W.2d 901, 903 (N.D.1986). In *Ly,* at 310, the court agreed with a restaurant buyer's argument that the sale of a restaurant was governed by the Minnesota Act, and the buyer's status was more of a consumer of the restaurant business than a buyer of a business for resale. *Id.*

The court said the Minnesota Act was intended to protect a broad, but not limitless, range of individuals from fraudulent and deceptive trade practices, and viewing the restaurant buyer as a "consumer" did not push application of the Act onto new ground. *Id. Ly* recognizes a broader application of Agway's definition of consumer than Agway's application of its definition, and *Ly* does not preclude application of the plain language of N.D.C.C. ch. 51–15 to the plaintiffs' claims.

2. Because the language of N.D.C.C. ch. 51–15 is clear and unambiguous, we do not resort to extrinsic interpretive aids.

[¶ 10]   SANDSTROM, NEUMANN, MARING, JJ., and BEKKEN, D.J.

[¶ 11]   BEKKEN, D.J., sitting in place of KAPSNER, J., disqualified.