2003 ND 144

**Amy Jo KJOLSRUD, f/k/a Amy Jo Mattson, Plaintiff, Appellant, and Cross–Appellee,**

v.

**MKB MANAGEMENT CORPORATION d/b/a Red River Women's Clinic, Defendant, Appellee, and Cross–Appellant.**

No. 20030023.

Supreme Court of North Dakota.

Sept. 23, 2003.

Rehearing Denied Oct. 23, 2003.

John Kindley (argued), Mishawaka, IN, and Gregory L. Lange (appeared), Richardson, Lange & Donovan, Hazen, ND, for plaintiff, appellant, and cross-appellee.

Linda Rosenthal (argued), Janet Crepps (appeared), Center for Reproductive Rights, New York, NY, and Joseph A. Turman (appeared), DeMars & Turman, Fargo, ND, for defendant, appellee, and cross-appellant.

NEUMANN, Justice.

[¶ 1] Amy Jo Kjolsrud, formerly known as Amy Jo Mattson, appealed from a judgment dismissing her false advertising claim against MKB Management Corporation doing business as Red River Women's Clinic ("MKB"). MKB cross-appealed from the trial court's determination that Kjolsrud had standing under N.D.C.C. § 51–12–14 to bring her false advertising claim. We hold Kjolsrud does not have standing to maintain her false advertising claim, and we affirm the judgment dismissing her action.

I

[¶ 2] MKB is located in Fargo and provides women with reproductive health care services, including abortions. In December 1999, Kjolsrud sued MKB to enjoin it from distributing a brochure that contained an allegedly false statement that "[a]nti-abortion activists claim that having an abortion increases the risk of developing breast cancer and endangers future childbearing. *None* of these claims are supported by medical research or established medical organizations." Kjolsrud alleged MKB's brochure violated N.D.C.C. §§ 51–12–01 and 51–12–08, North Dakota's false advertising law, and sought to enjoin MKB from distributing the brochure under N.D.C.C. § 51–12–14. Kjolsrud conceded she had not read the brochure before filing her action. Her complaint alleged she was "a pro-life woman who lives in Fargo, North Dakota," and "regularly counsels women seeking abortion about the risks of abortion and about life-giving alternatives." Kjolsrud alleged standing under N.D.C.C. § 51–12–14 on "behalf of herself, women seeking abortions, and the general public."

[¶ 3] After Kjolsrud filed her action, MKB stopped using that brochure and replaced it with another brochure, which stated:

> Some anti-abortion activists claim that having an abortion increases the risk of developing breast cancer. A substantial body of medical research indicates that there is no established link between abortion and breast cancer. In fact, the National Cancer Institute has stated, "[t]here is no evidence of a direct relationship between breast cancer and either induced or spontaneous abortion."

Kjolsrud filed a supplemental complaint, alleging both brochures violated N.D.C.C. § 51–12–08. She sought to enjoin MKB

from distributing both brochures and to require MKB to affirmatively disclose "medical evidence that having an abortion increases the risk of developing breast cancer." Kjolsrud conceded that when she filed her supplemental complaint, she no longer lived in Fargo, or engaged in sidewalk counseling. However, her supplemental complaint alleged she was a "pro-life woman who lives in Fargo, North Dakota" and "regularly counsels women seeking abortion about the risks of abortion and about life-giving alternatives." She alleged standing under N.D.C.C. § 51–12–14 on "behalf of herself, women seeking abortions, and the general public."

[¶ 4] Kjolsrud subsequently filed an amended supplemental complaint seeking the same relief, but deleting her allegation that she was a pro-life woman who lived in Fargo and regularly counseled women seeking abortion about the risks of abortion and about life-giving alternatives. In her supplemental amended complaint, Kjolsrud alleged she was a citizen of North Dakota claiming standing under N.D.C.C. § 51–12–14 on "behalf of herself, women seeking abortions, and the general public."

[¶ 5] The trial court decided Kjolsrud had standing under N.D.C.C. § 51–12–14. After a bench trial, the court found the information contained in MKB's brochures was neither untrue nor misleading. The court denied Kjolsrud's request for injunctive relief and dismissed her action. Kjolsrud appealed, and MKB cross-appealed.

## II

[¶ 6] MKB argues the trial court erred in concluding Kjolsrud had standing to maintain an action for injunctive relief under N.D.C.C. § 51–12–14, because she suffered no injury or threat of injury and had not seen MKB's brochures when she filed her complaint. Kjolsrud concedes she had not read MKB's brochures and was not personally misled or harmed by MKB's brochures. She claims she has standing under the plain language of N.D.C.C. § 51–12–14, which authorizes actions for injunction "by any person acting for the interests of itself, its members, or the general public." Relying on *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal.4th 553, 71 Cal.Rptr.2d 731, 950 P.2d 1086, 1091 (1998), she argues N.D.C.C. § 51–12–14 confers standing upon persons who have "suffered no injury at all."

[¶ 7] The interpretation of a statute is a question of law which is fully reviewable on appeal. *Ash v. Traynor*, 2000 ND 75, ¶ 4, 609 N.W.2d 96. The primary purpose of statutory construction is to ascertain the Legislature's intent. *Douville v. Pembina County Water Res. Dist.*, ND 2000 124, ¶ 9, 612 N.W.2d 270. In ascertaining legislative intent, we look first to the words used in the statute, giving them their plain, ordinary, and commonly understood meaning. *Id.* at ¶ 9. If the plain language of a statute is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit because legislative intent is presumed clear from the face of the statute. *Lawrence v. North Dakota Workers Comp. Bureau*, 2000 ND 60, ¶ 19, 608 N.W.2d 254. We construe statutes to avoid constitutional infirmities. *Id.*

[¶ 8] Section 51–12–14, N.D.C.C. provides:

Any person who violates or proposes to violate any of the provisions of sections 51–12–08 through 51–12–12 may be enjoined by any court of competent jurisdiction.

Actions for injunction under this section may be prosecuted by the attorney general or any state's attorney in this state in the name of the people of the state of North Dakota upon their own complaint or upon the complaint of any

board, officer, person, corporation, limited liability company, or association or by any person acting for the interests of itself, its members, or the general public.

[¶ 9] In *State Bd. of Architecture v. Kirkham, Michael & Assoc., Inc.,* 179 N.W.2d 409, 410–11 (N.D.1970), this Court held the State Board of Architecture, in the exercise of its police power to regulate the architecture profession, was authorized to bring an action to enjoin false advertising under N.D.C.C. § 51–12–14. There, the State Board of Architecture commenced an action under N.D.C.C. § 51–12–14 against an architectural firm to enjoin the firm from conducting allegedly false advertising of its architectural services in violation of N.D.C.C. § 51–12–08. *State Bd.,* at 410. The trial court dismissed the complaint on the ground the State Board of Architecture was not authorized to maintain the action under N.D.C.C. § 51–12–14, because the action was not brought by the attorney general or a state's attorney. *State Bd.,* at 410–11. This Court said N.D.C.C. § 51–12–14 authorized an action for injunctive relief by the attorney general or a state's attorney, or "by any person acting for the interests of itself, its members or the general public," and concluded:

> Surely the Legislative Assembly intended this latter provision to have some meaning, even though the language of the statute is not clear or concise and certainly is not the best. The only meaning that this language can possibly be given is that, in addition to allowing such action to be brought by the Attorney General or by one of the State's attorneys, upon complaint of the parties mentioned, it might also be brought by any person acting for his own interests or by any board or association for its own interests or for the interests of its

members or the interests of the general public.

> This latter provision, as we interpret it, would permit an action to be brought by the State Board of Architecture for the interests of its members. The Board of Architecture brought this action to enjoin false advertising on the part of the defendant, to protect its own interests and the interests of its members and the interests of the general public.... We therefore hold that the State Board of Architecture may properly bring an action to enjoin false advertising under the above statute.

*State Bd.,* at 411.

[¶ 10] The language of N.D.C.C. § 51–12–14 authorizes two potential classes of plaintiffs to bring an action in a court of competent jurisdiction for injunctive relief against any person who violates N.D.C.C. § 51–12–08:(1) the attorney general or any state's attorney upon their own complaint or upon the complaint of any board, officer, person, corporation or association, or (2) any person acting for the interests of itself, its members, or the general public. Section 1–01–28, N.D.C.C., defines " 'person', except when used by way of contrast, [to] include[ ] not only a human being, but a body politic or corporate." *See also* N.D.C.C. § 1–01–09 (words defined by statute are given that meaning whenever it occurs in a subsequent statute, unless a contrary intention plainly appears). Under N.D.C.C. § 51–12–14, any person, which includes not only a human being but a body politic or corporate, acting for the interests of itself, its members, or the general public may bring an action in a court of competent jurisdiction for injunctive relief against any person who violates N.D.C.C. § 51–12–08.

[¶ 11] MKB nevertheless argues N.D.C.C. § 51–12–14 does not provide "limitless standing" for any person to

maintain an action for injunctive relief regardless of whether that person has been personally misled or harmed by the brochures. MKB argues the rejection of limitless standing in N.D.C.C. § 51–12–14 is consistent with *State Bd.* and the separation-of-powers doctrine. We agree.

[¶ 12] We construe statutes to avoid constitutional infirmities. *Lawrence,* 2000 ND 60, ¶ 19, 608 N.W.2d 254. This Court has recognized the Legislature may not expand the scope of a judge's duties beyond the judiciary's institutional role. *See City of Carrington v. Foster County,* 166 N.W.2d 377, 385 (N.D.1969) (holding statute imposing nonjudicial duties upon court violates separation of powers inherent in state constitution). Under our constitutional framework for the separation of powers, it is well established that courts perform judicial functions and do not render advisory opinions on abstract disagreements. *See id.; In Interest of C.W.,* 453 N.W.2d 806, 810 (N.D.1990).

[¶ 13] A court may decide the merits of a dispute only if plaintiffs demonstrate they have standing to litigate the issues before the court. *Rebel v. Nodak Mut. Ins. Co.,* 1998 ND 194, ¶ 8, 585 N.W.2d 811. "Standing is the concept used 'to determine if a party is sufficiently affected so as to insure that a justiciable controversy is presented to the court.' " *Id.* (quoting *Billey v. North Dakota Stockmen's Ass'n,* 1998 ND 120, ¶ 7, 579 N.W.2d 171). In *State v. Carpenter,* 301 N.W.2d 106, 107 (N.D.1980), this Court said standing to bring a lawsuit focuses upon whether plaintiffs are entitled to have a court decide the merits of a dispute and is founded on concern about the proper role of courts in a democratic society. We said, without proper standing limitations, courts would be called upon to decide purely abstract questions, and as an aspect of justiciability, the standing requirement focuses on whether plaintiffs have alleged such a personal stake in the outcome of a controversy to justify a court's exercise of remedial powers on their behalf. *Id.*

[¶ 14] In *Carpenter,* 301 N.W.2d at 107, we said standing analysis requires a two-fold inquiry: (1) plaintiffs must suffer some threatened or actual injury resulting from the putatively illegal action, and (2) the asserted harm must not be a generalized grievance shared by all or a large class of citizens, i.e., plaintiffs generally must assert their own legal rights and interests and cannot rest their claim for relief on the legal rights and interests of third parties. In *Carpenter,* at 107–11, this Court said a criminal defendant had satisfied standing requirements and was entitled to claim a criminal prosecution violated his equal protection and due process rights. *See also Trinity Med. Ctr. v. North Dakota Bd. of Nursing,* 399 N.W.2d 835, 837–38 (N.D.1987), wherein this Court held hospitals were injured by rules promulgated for nursing education programs and therefore had standing to challenge those rules.

[¶ 15] In *State v. Rosenquist,* 78 N.D. 671, 51 N.W.2d 767, 787–88 (1952), this Court considered a statutory construction issue analogous to this case in the context of a statute that authorized actions for adverse claims to real property by "any person having an estate or an interest in, or lien or encumbrance upon, real property, ... against any person claiming an estate or interest in, or lien or encumbrance upon, the same." In *Rosenquist,* at 788–89 (citations omitted), this Court said

"For a standing as party plaintiff it is necessary ... that this person have in the cause of action asserted, a remedial interest which the law of the forum can recognize and enforce. It is a rule of universal acceptation that to entitle any person to maintain an action in court it

must be shown that he has a justiciable interest in the subject matter in litigation, either in his own right or in a representative capacity.... It is regarded as fundamental that no person may maintain an action respecting a subject matter, in respect of which he has no interest, right, or duty, either personal or fiduciary." "One cannot rightfully invoke the jurisdiction of the court to enforce private rights or maintain a civil action for the enforcement of such rights unless he has in an individual or representative capacity some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy."

This Court quoted with approval the following from *Herrick v. Churchill*, 35 Minn. 318, 29 N.W. 129 (1886),

"The contention of plaintiff, plainly stated, is that, under the literal wording of this statute, any person who says that he claims title, without either alleging or proving that he has in fact any title to, or interest in, the real estate, may maintain an action against any other person who claims an interest in it, and compel him to prove his title, or be adjudged to have none. If the statute means this, it certainly establishes a most unreasonable and anomalous rule. We think it was never before heard of, in judicial proceedings, that one person, who has no interest whatever in property, may maintain an action against another who claims some interest in it, and compel him to prove the validity of his claim. We do not think the statute was intended to establish any such rule."

*Rosenquist*, 51 N.W.2d at 789.

[¶ 16] In *Rosenquist*, 51 N.W.2d at 788–89, this Court construed the statute to incorporate "universal" requirements for standing to avoid an "unreasonable and anomalous" result. This Court's interpretation of that statute effectively avoided an interpretation that would have authorized advisory opinions and raised a potential constitutional infirmity. Under *Rosenquist* and our standing jurisprudence, we construe N.D.C.C. § 51–12–14 to incorporate standing requirements for an action to enjoin allegedly false advertising. We decline to assume the Legislature intended a result contrary to our law for standing. *See Witthauer v. Burkhart Roentgen, Inc.*, 467 N.W.2d 439, 445 (N.D.1991) (declining to assume Legislature intended result contrary to prevailing doctrine for law of products liability).

[¶ 17] We reject Kjolsrud's reliance on *Stop Youth Addiction*, 17 Cal.4th 553, 71 Cal.Rptr.2d 731, 950 P.2d 1086, because we conclude the California cases are not consistent with our standing jurisprudence. In *Stop Youth Addiction*, 71 Cal.Rptr.2d 731, 950 P.2d at 1091, the California Supreme Court said, " '[a] private plaintiff who has himself suffered no injury at all may sue to obtain relief for others' " under a statute similar to N.D.C.C. § 51–12–14. *See also Committee On Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 197 Cal.Rptr. 783, 673 P.2d 660, 671 (1983) (holding organizational plaintiffs have standing to sue under statute authorizing "any person" to sue); *Barquis v. Merchants Collection Ass'n*, 7 Cal.3d 94, 101 Cal.Rptr. 745, 496 P.2d 817, 828–29 (1972) (recognizing broad language of statute protects consumers as well as competitors); *Hernandez v. Atlantic Fin. Co.*, 105 Cal.App.3d 65, 164 Cal.Rptr. 279, 284 (1980) (rejecting argument that traditional concepts of standing must be read into statute). Although California's statutory provision for enjoining false advertising is similar to N.D.C.C. § 51–12–14 and our statute originally was enacted in 1961 as "a verbatim copy of a California act which had worked very well," *see Hearing*

on *H.B. 662 Before the Senate Judiciary Comm.*, 37th N.D. Legis. Sess. (Feb. 16, 1961) (testimony of Rep. Burk), the California courts' interpretation of its statute occurred after we enacted N.D.C.C. § 51–12–14 in 1961. Consequently, we do not apply the rule that where a statute is taken from another state it is presumed to have been adopted with the construction placed upon it by the courts of that state. *See Treiber v. Citizens State Bank,* 1999 ND 130, ¶ 14, 598 N.W.2d 96. The California decisions authorize an action by a plaintiff who has suffered "no injury at all," and are contrary to our rules for standing. We conclude those decisions are not persuasive for our interpretation of N.D.C.C. § 51–12–14. *See City of Carrington,* 166 N.W.2d at 384 (rejecting argument to follow Virginia interpretation of statute from which North Dakota statute borrowed, because Virginia interpretation would violate separation of powers).

■ [¶ 18] We construe N.D.C.C. § 51–12–14 to authorize "any person acting for the interests of itself, its members, or the general public" to bring an action for injunctive relief if that person has standing to maintain the action under our jurisprudence for standing. Our interpretation of N.D.C.C. § 51–12–14 is consistent with *State Bd.,* 179 N.W.2d at 410–11, where the plaintiff was the North Dakota State Board of Architecture. This Court's decision recognized the State, in the exercise of its police power, was authorized to regulate the architecture profession. *Id.* at 410. Under our standing jurisprudence, the State Board of Architecture suffered a threatened or actual harm by an architectural firm's allegedly false advertising of architectural services in North Dakota and was asserting its own legal rights and interests. Our interpretation of N.D.C.C. § 51–12–14 is also consistent with decisions from other states which have con-

strued comparable statutory provisions under traditional standing limitations. *See Hall v. Walter,* 969 P.2d 224, 230–31 (Colo. 1998); *Ganim v. Smith & Wesson Corp.,* 258 Conn. 313, 780 A.2d 98, 133–34 (2001).

### III

■ [¶ 19] Kjolsrud concedes that, without her interpretation of N.D.C.C. § 51–12–14, she does not have standing to maintain her action. Kjolsrud concedes she had not read the brochures before filing her action. Her amended supplemental complaint does not allege she has suffered an injury from MKG's putatively illegal action. We conclude Kjolsrud does not have standing to maintain her action for injunctive relief under N.D.C.C. § 51–12–14. We therefore affirm the trial court's judgment dismissing her action. Because of our resolution of this issue, we do not address Kjolsrud's argument that the trial court erred in finding MKB's brochures did not violate N.D.C.C. § 51–12–08.

[¶ 20] We affirm the judgment dismissing Kjolsrud's action.

[¶ 21] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, concur.