Filed 8/31/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 167

Robert Ackre, Plaintiff and Appellant

v.

Chapman & Chapman, P.C., Defendant and Appellee

No. 20100044

Appeal from the District Court of Rolette County, Northeast Judicial District, the Honorable Michael G. Sturdevant, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Larry Michel Baer, 1550 South Deer Road, West Des Moines, IA 50266, for plaintiff and appellant.

Patrick W. Durick (argued) and Zachary Evan Pelham (appeared), P.O. Box 400, Bismarck, N.D. 58502-0400, for defendant and appellee.

Ackre v. Chapman & Chapman

No. 20100044

Kapsner, Justice.

[¶1] 
Robert Ackre appeals from a summary judgment dismissing his action alleging Chapman and Chapman, P.C., committed an unlawful practice under N.D.C.C. ch. 51-15 and attorney misconduct under N.D.C.C. § 27-13-08.  We hold Ackre does not have standing to sue Chapman and Chapman for attorney misconduct and Ackre has not raised a factual issue regarding his unlawful practice claim.  We affirm.

I

[¶2] Ackre, a licensed North Dakota attorney, sued the law firm of Chapman and Chapman, alleging both he and Chapman and Chapman directly compete to represent enrolled members of federally recognized American Indian Tribes as plaintiffs in personal injury litigation involving motor vehicle accidents.  Ackre claims federal and state statutes, 
see
 42 U.S.C. §§ 2651-2653 and N.D.C.C. § 35-18-01, require Native American clients to use proceeds from personal injury settlements to satisfy hospital liens and to reimburse the United States Department of Health and Human Services  for government paid medical expenses for treatment for injuries sustained by Native Americans in motor vehicle accidents.  Ackre asserts Chapman and Chapman’s failure to advise its Native American clients about the mandatory statutory requirements to use settlement proceeds to satisfy hospital liens and to reimburse the federal government for government paid medical expenses constitutes attorney misconduct under N.D.C.C. § 27-13-08 and an unlawful practice under N.D.C.C. ch. 51-15.  Ackre asserts Chapman and Chapman’s conduct damaged his law practice, and he sought treble damages in excess of $50,000 and attorney fees under those statutes.

[¶3] Chapman and Chapman moved to dismiss Ackre’s complaint under N.D.R.Civ.P. 12(b)(6), arguing neither federal nor state statutes require Native American clients or their lawyers to use settlement proceeds to reimburse the federal government for medical expenses paid by the government.  Chapman and Chapman argued federal law gives the federal government a right to recover medical expenses from a tortfeasor who is liable for a Native American client’s injury, but the federal government may not directly sue a Native American client to recover proceeds received from the responsible tortfeasor.  Chapman and Chapman argued the hospital lien statute, N.D.C.C. § 35-18-01, was not applicable because it was up to the hospital, not the client’s attorney, to enforce the hospital lien.  Chapman and Chapman claimed Ackre was not an injured party under N.D.C.C. § 27-13-08 and its alleged conduct was not an unlawful practice under N.D.C.C. ch. 51-15.

[¶4] Ackre resisted Chapman and Chapman’s motion to dismiss and submitted documents from a settlement procured by Chapman and Chapman for a Native American client in which the client received $50,000 from the tortfeasors’ motor vehicle insurance carrier.  Those documents included a hospital bill with $46,481 in total hospital charges with “IHS-Belcourt ND” identified as the client’s insurance company, a letter from the United States Department of Health and Human Services stating it had paid $30,861 for medical care and treatment furnished by or at the expense of Indian Health Services for that client, and a February 4, 2004, cover letter from the tortfeasors’ insurance company to an attorney with Chapman and Chapman, which stated:

[L]et this confirm settlement of your client’s bodily injury claim for our insured’s policy limit of $50,000.00.  This amount is contingent upon signed release of all claims with indemnity from your client and inclusive of all medical bills incurred.  This will also confirm that you will honor any and all outstanding liens.

Ackre provided the district court with a copy of a “full release of all claims,” which was signed by an attorney with Chapman and Chapman and by the Native American client and stated:

The undersigned acknowledge(s) that certain liens and subrogation interests may have been presented in connection with this action and, as a condition of this settlement, the undersigned agree(s) to satisfy all unpaid liens and/or subrogation interests out of the proceeds of the aforesaid settlement.  The undersigned do(es) further expressly stipulate(s) and agree(s) in consideration of the aforesaid payment to them to indemnify and hold forever harmless [the tortfeasors and their insurance company] against loss from any claims, demands or actions that may hereafter be made against them or either of them, or their agents or representatives, as a result of any medical liens, or subrogation interests that may exist with regard to the undersigned’s accident and resulting injuries and damages.

The undersigned further agree(s) to indemnify and hold harmless [the tortfeasors and their insurance company] from any and all claims for indemnity, contribution and equitable subrogation which may be made against them by reason of the aforementioned incident.  Such agreement to indemnify and hold forever harmless the aforesaid [tortfeasors and their insurance company] shall include defending them from any and all such claims presented against them, and reimbursing all attorney fees, litigation expenses and court costs, taxable or otherwise, incurred by them in connection with any such claim.

Ackre also provided the court with Chapman and Chapman’s responses to requests for admission in which Chapman and Chapman stated it had no duty to contact its clients’ treating hospital, Indian Health Services, or the federal government about payment of its clients’ medical bills and admitted it had not contacted those entities, informed them about the settlement, or paid its clients’ medical expenses.

[¶5] The district court considered Ackre’s submitted materials and granted Chapman and Chapman summary judgment, concluding Ackre was not entitled to recovery under either N.D.C.C. ch. 51-15 or N.D.C.C. § 27-13-08.  The court said the federal government, as the provider of medical care for Native Americans through Indian Health Services or other providers, has a right of subrogation against a tortfeasor under federal statute, but the federal government does not have a direct claim against an injured Native American for government paid medical care.  The court explained injured Native Americans who receive treatment at hospitals that are not part of Indian Health Services do not have individual responsibility to pay for the treatment because the treating hospitals have agreed to full payment at a reduced rate from the federal government.  The court did recognize, however, that Chapman and Chapman may be subject to a claim for estoppel or indemnification by an appropriate entity because of the language of the proffered settlement agreement. The court decided Ackre was not entitled to recover for Chapman and Chapman’s alleged misconduct under N.D.C.C. § 27-13-08, because Ackre was not the “party injured.”  The court also concluded Chapman and Chapman’s conduct did not constitute an unlawful practice under N.D.C.C. § 51-15-02, because that conduct was not deceptive or fraudulent under the procedures for payment for an injured Native American client’s medical treatment.  The court also said Ackre’s claimed damages were speculative. 

II

[¶6] The district court decided this case by summary judgment, which is a procedural device for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that reasonably can be drawn from undisputed facts, or if the only issues to be resolved are questions of law.  
Kappenman v. Klipfel
, 2009 ND 89, ¶ 7, 765 N.W.2d 716.  Whether the district court properly granted summary judgment is a question of law that we review de novo on the record.  
Id.
  Summary judgment is appropriate if reasonable minds could reach only one conclusion on the evidence submitted to the district court.  
Zimprich v. Broekel
, 519 N.W.2d 588, 592-93 (N.D. 1994).

III

[¶7] Ackre provides an extensive explanation about the priority of a treating hospital’s statutory lien for the full value of its medical services provided to Native Americans injured by tortfeasors under N.D.C.C. § 35-18-01 and the federal government’s right to subrogation against tortfeasors for medical care paid for by the federal government for injured Native Americans under 42 U.S.C. §§ 2651-2653.  Chapman and Chapman does not dispute Ackre’s characterization of the federal and state statutes, and we accept that characterization for purposes of this decision.  

[¶8] The gist of Ackre’s argument is that attorneys representing Native American clients, who have received medical treatment paid for by the federal government and who have received settlement proceeds from tortfeasors or their insurers, have an obligation to use the settlement proceeds to satisfy the full amount of a treating hospital’s hospital lien and to reimburse the federal government for medical expenses paid by the government on behalf of the Native American client.  Ackre claims he complies with those obligations and argues Chapman and Chapman’s failure to satisfy those obligations constitutes attorney misconduct and an unlawful practice.  Ackre asserts Chapman and Chapman knowingly engages in deceptive acts and practices by leading the general public to believe Chapman and Chapman can successfully evade enforcement of the statutory liens and subrogation interests.  Ackre asserts he has a civil claim for damages against Chapman and Chapman under N.D.C.C. §§ 27-13-08 and 51-15-09, because Chapman and Chapman’s conduct is well known in the Native American community and Ackre is forced to compete at a disadvantage with Chapman and Chapman in the same marketplace for the same personal injury clients.    

A

[¶9] Section 27-13-08, N.D.C.C., provides:

Every attorney who:

1. Is guilty of any deceit or collusion or consents to any deceit or collusion with intent to deceive the court or any party;

2. Willfully delays the attorney’s client’s suit with a view to the attorney’s own gain; or

3. Willfully receives any money or other property for or on account of any money or debt which the attorney has not laid out or become answerable for,

is guilty of a class A misdemeanor and in addition forfeits to the party injured treble damages to be recovered in a civil action. 

[¶10] Statutory interpretation is a question of law, fully reviewable on appeal.  
Jorgenson v. Agway, Inc.
, 2001 ND 104, ¶ 5, 627 N.W.2d 391.  The primary objective in interpreting a statute is to determine the intent of the legislation.  
Id.
  In ascertaining the intent of the legislation, we look first to the words in a statute, giving them their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02.  Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1-02-07.  If the language of a statute is clear and unambiguous, “the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit.”  N.D.C.C. § 1-02-05.  The language of a statute must be interpreted in context and according to the rules of grammar, giving meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1-02-03 and 1-02-38(2).  We construe statutes to give effect to all of their provisions, so that no part of the statute is rendered inoperative or superfluous.  N.D.C.C. § 1-02-38(2) and (4).  We also construe statutes to avoid constitutional infirmities.  
E.g.
, 
City of Belfield v. Kilkenny
, 2007 ND 44, ¶ 8, 729 N.W.2d 120.

[¶11] In 
Kjolsrud v. MKB Management Corp.
, 2003 ND 144, ¶ 12, 669 N.W.2d 82, this Court “recognized the Legislature may not expand the scope of a judge’s duties beyond the judiciary’s institutional role,” and said “courts perform judicial functions and do not render advisory opinions on abstract disagreements” under our constitutional framework for the separation of powers.  We said “courts may decide the merits of a dispute only if plaintiffs demonstrate they have standing to litigate the issues before the court.”  
Id.
 at ¶ 13.  “[W]ithout proper standing limitations, courts would be called upon to decide purely abstract questions, and as an aspect of justiciability, the standing requirement focuses on whether plaintiffs have alleged such a personal stake in the outcome of a controversy to justify a court’s exercise of remedial powers on their behalf.”  
Id.

[¶12] This Court has established a two-pronged test to determine whether a litigant has alleged such a personal stake in the outcome of a controversy as to justify the court’s remedial powers to decide the merits of the dispute.  
Kjolsrud
, 2003 ND 144, ¶ 14, 669 N.W.2d 82; 
State v. Carpenter
, 301 N.W.2d 106, 107 (N.D. 1980).  First, a litigant must have suffered some threatened or actual injury resulting from the putatively illegal action.  
Kjolsrud
, at ¶ 14; 
Carpenter
, at 107.  Second, the asserted harm must not be a generalized grievance shared by all or a large class of citizens; rather, a litigant generally must assert his or her own legal rights and interests and cannot rest a claim to relief on the legal rights and interests of third parties.  
Kjolsrud
, at ¶ 14; 
Carpenter
, at 107.

[¶13] Under N.D.C.C. § 27-13-08, a “party injured” by the enumerated attorney conduct is entitled to treble damages.  The plain language of that statute provides an enhanced remedy to the “party injured” for the described attorney conduct, which includes “deceit or collusion or consent[] to any deceit or collusion with intent to deceive the court or any party,” or receipt of “any money or other property for or an account of any money or debt which the attorney has not laid out or become answerable for.”  
See
 
Loomis v. Ameritech Corp.
, 764 N.E.2d 658, 666-67 (Ind. Ct. App. 2002) (construing similar statute to not create new cause of action, but to treble damages recoverable in action for deceit); 
Love v. Anderson
, 61 N.W.2d 419, 422 (Minn. 1953) (same); 
Bennett v. Jones, Waldo, Holbrook & McDonough
, 2003 UT 9, ¶ 73, 70 P.3d 17 (same).  

[¶14] Our cases under N.D.C.C. § 27-13-08 have generally involved actions by clients or parties to a legal proceeding against attorneys.  
See
 
Riemers v. Peters-

Riemers
, 2004 ND 153, ¶¶ 27-30, 684 N.W.2d 619 (concluding allegations by party to proceedings against opposing party’s attorney were conclusory and not supported by sufficient evidence to withstand summary judgment); 
Bjorgen v. Kinsey
, 466 N.W.2d 553, 554, 558-59 (N.D. 1991) (affirming client’s damage award against attorney); 
Olson v. Fraase
, 421 N.W.2d 820, 826, 832 (N.D. 1988) (involving action by former client against attorney).  The plain language of N.D.C.C. § 27-13-08 authorizes forfeiture of treble damages to the “party injured” by the attorney’s conduct and does not provide limitless standing nor negate general standing requirements for actions against attorneys.  
See
 
Kjolsrud
, 2003 ND 144, ¶ 18, 669 N.W.2d 82 (rejecting argument for limitless standing by “any person” under N.D.C.C. § 52-12-14 in false advertising claim against corporation where plaintiff conceded she had not read advertising brochure before filing action).  

[¶15] Here, the record includes a settlement and release of a claim which was signed by an attorney with Chapman and Chapman and by a Native American client.  Under the settlement agreement, the “undersigned acknowledge[d] that certain liens and subrogation interests may have been presented in connection with this action and, as a condition of this settlement, the undersigned agree[d] to satisfy all unpaid liens and/or subrogation interests out of the proceeds of the aforesaid settlement.”  The undersigned also “agree[d] . . . to indemnify and hold forever harmless [the tortfeasors and their insurance company] against loss from any claims . . . as a result of any medical liens, or subrogation interests that may exist with regard to the undersigned’s accident and resulting injuries and damages.”  

[¶16] Although Chapman and Chapman’s clients, a treating medical hospital with a hospital lien, or the federal government with a subrogation interest ultimately may have a claim regarding disbursement of the settlement proceeds under Ackre’s explanation of federal and state law, Ackre’s claims are a generalized grievance and his specific assertions rest on the legal rights and interests of third parties.  
See
 
In re Brosnahan
, 376 B.R. 387, 390 (W.D. N.Y. 2007) (construing similar New York statute and holding attorney’s alleged complicity in debtor’s alleged false statements to induce bank to extend credit and to provide information in bankruptcy proceeding could only give rise to cause of action, if any, by bank, mortgagee, or bankruptcy estate and did not give rise to cause of action by judgment creditor against attorney).  We conclude Ackre is not a “party injured” under N.D.C.C. § 27-13-08 and does not have standing to bring a claim under that statute.

B

[¶17] Ackre also argues Chapman and Chapman’s actions constitute an unlawful practice under N.D.C.C. ch. 51-15.  
He asserts that he competes with Chapman and Chapman for Native American clients and has lost potential clients and suffered injury by Chapman and Chapman’s claimed unlawful practice.  

[¶18] Chapter 51-15, N.D.C.C., prohibits unlawful sales or advertising practices. Section 51-15-02, N.D.C.C., defines an unlawful practice as the use of any deceptive act, fraud, false promise, or misrepresentation in connection with the sale or advertisement of any merchandise:

The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice.

“Merchandise” is defined to include “services,” and “person” is defined as “any natural person or the person’s legal representative, partnership, corporation, limited liability company, trust, business entity, or association.”  N.D.C.C. § 51-15-01(3) and (4).  Section 51-15-09, N.D.C.C., authorizes an action by “any person against any person who has acquired any moneys or property by means of any” unlawful practice and provides:

Except as provided in section 51-15-02.3, this chapter  does not bar any claim for relief by any person against any person who has acquired any moneys or property by means of any practice declared to be unlawful in this chapter.  If the court finds the defendant knowingly committed the conduct, the court may order that the person commencing the action recover up to three times the actual damages proven and the court must order that the person commencing the action recover costs, disbursements, and actual reasonable attorney’s fees incurred in the action.

[¶19] As originally enacted in 1965, N.D.C.C. ch. 51-15 authorized the attorney general to enforce the prohibition against unlawful practices.  
See
 1965 N.D. Sess. Laws ch. 332, §§ 4-7, 9-10.  Section 51-15-09, N.D.C.C., was amended in 1991 to explicitly authorize a private cause of action by “any person against any person who has acquired moneys or property by means of any practice declared to be unlawful” under N.D.C.C. ch. 51-15.  
See
 1991 N.D. Sess. Laws ch. 529, § 1; 
Hearing on H.B. 1255 Before House Judiciary Comm.
, 52nd N.D. Legis. Sess. (Jan. 28, 1991) (Prepared Testimony of Representative Bill Oban and Tom Englehardt, Director of North Dakota Attorney General’s Consumer Fraud Division).  

[¶20] In 
Jorgenson
, 2001 ND 104, ¶¶ 8-9, 627 N.W.2d 391, we held N.D.C.C. ch. 51-15 applied to transactions in which farmers purchased allegedly defective confection sunflower seeds to grow for subsequent sale and claimed the seed was marketed and sold in violation of N.D.C.C. ch. 51-15.  We said the clear and unambiguous language of N.D.C.C. § 51-15-09 and the definition of “person” belied a legislative intent to limit the statute to only consumer transactions.  
Jorgenson
, at ¶ 8.  Under 
Jorgenson
, the protections of N.D.C.C. ch. 51-15 are not limited to consumer transactions.

[¶21] Here, the issue is the application of N.D.C.C. ch. 51-15 to an action by an attorney against another attorney who allegedly competes for the same clients.  Other courts have held that conduct by attorneys may be subject to statutes prohibiting unfair trade practices.  
St. Paul Fire and Marine Ins. Co. v. Ellis & Ellis
, 262 F.3d 53, 66-67 (1st Cir. 2001) (attorney’s conduct in knowingly representing one claimant using different names in separate workers compensation claims against different insurance companies could constitute deceptive trade practice under Massachusetts law in action by second insurance company against attorney); 
Sears, Roebuck & Co. v. Goldstone & Sudalter
, 128 F.3d 10, 19-20 (1st Cir. 1997) (attorney’s conduct in billing client constituted deceptive trade practice in action by client against attorney); 
Pucci v. Litwin
, 828 F.Supp. 1285, 1299-1300 (N.D. Ill. 1993) (client could maintain action against attorney for violation of consumer fraud and deceptive business practices act under Illinois law); 
Heslin v. Connecticut Law Clinic
, 461 A.2d 938, 943-47 (Conn. 1983) (Connecticut unfair trade practice act applies to attorneys and does not violate separation of powers); 
Brown v. Gerstein
, 460 N.E.2d 1043, 1051-52 (Mass. Ct. App. 1984) (attorneys’ conduct fits within deceptive trade practice in action by client against attorney).  The definition of “merchandise” in N.D.C.C. § 51-

15-01(3) includes “services” and is broad enough to include services provided by an attorney.  
See
 
Jorgenson
, 2001 ND 104, ¶ 8, 627 N.W.2d 391.  

[¶22] Depending on the specific statutory language at issue, some courts have held that a person or business may bring an action against a competitor for allegedly unfair practices.  
Securitron Magnalock Corp. v. Schnabolk
, 65 F.3d 256, 264 (2nd Cir. 1995) (construing New York law authorizing action by “any person who has been injured” by deceptive acts and holding business had standing to sue competitor for matter effecting public interest of New York); 
Southern Serv. Corp. v. Excel Bldg. Servs., Inc.
, 617 F.Supp.2d 1097, 1099-1100 (D. Nev. 2007) (construing Nevada consumer fraud law granting standing to “victims” of consumer fraud and holding business had standing to sue competitor for consumer fraud); 
John Labatt Ltd. v. Molson Breweries
, 853 F.Supp. 965, 967-70 (E.D. Mich. 1994) (construing Michigan law authorizing a person to bring a consumer protection action and holding business had standing to sue competitor for unfair trade practice); 
Eder Bros., Inc. v. Wine Merchants of Conn., Inc.
, 880 A.2d 138, 149-50 (Conn. 2005) (holding business has standing to sue competitor under Connecticut Unfair Practices Act; statute applies to broad spectrum of commercial activity and is not limited to consumer injury); 
Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.
, 546 N.E.2d 33, 39-

41 (Ill. Ct. App. 1989) (construing Illinois law authorizing “any person” who suffers damages because of deceptive act to bring action and holding business has standing to sue competitor for statements about business in competitor’s advertising brochure if alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns); 
Philips v. Berner
, 789 So.2d 41, 49 (La. Ct. App. 2001) (stating Louisiana Unfair Trade Practice Act applies to claims by consumers or competitors).  Other courts have construed specific statutory language focusing on consumer protection to preclude a business from suing a competitor for allegedly unfair practices.  
Penn-Plax, Inc. v. L. Schultz, Inc.
, 988 F.Supp. 906, 909-11 (D. Md. 1997) (construing Maryland law to apply to consumer transaction and holding business lacked standing to sue competitor); 
H.D. Oliver Funeral Apts., Inc. v. Dignity Fun. Servs., Inc.
, 964 F. Supp. 1033, 1034-40 (E.D. Va. 1997) (construing Virginia law authorizing action involving consumer transaction and holding business did not have standing to sue competitor under consumer protection act).  

[¶23] The plain language of N.D.C.C. § 51-15-09 is not limited to consumer transactions.  
See
 
Jorgenson
, 2001 ND 104, ¶¶ 8-9, 627 N.W.2d 391.  The plain language of N.D.C.C. § 51-15-09 says N.D.C.C. ch. 51-15 “does not bar any claim for relief by any person against any person who has acquired any moneys or property by means of any practice declared to be unlawful in this chapter.”  In 
Kjolsrud
, 2003 N.D. 144, ¶¶ 6-18, 669 N.W.2d 82, this Court considered whether an individual had standing to bring a false advertising claim against a corporation under N.D.C.C. § 15-

12-14, which authorizes actions for injunction by the attorney general or any states attorney, or by “any person acting for the interests of itself, its members, or the general public.”  We rejected an argument for “limitless standing” and construed the statute to incorporate our standing jurisprudence for an action to enjoin alleged false advertising.  
Kjolsrud
, at ¶¶ 11, 16, 18.  Under 
Kjolsrud
 and 
Jorgenson
, we conclude the plain language of N.D.C.C. § 51-15-09 allows an action by an attorney against a competitor for alleged unlawful practices under N.D.C.C. ch. 51-15 and incorporates our standing jurisprudence, which requires the plaintiff to show the putatively illegal action caused some threatened or actual injury to his or her legal rights and interests.

[¶24] Ackre’s complaint alleges that as a competitor of Chapman and Chapman for Native American clients, he has been harmed by Chapman and Chapman’s allegedly unlawful practices and that Chapman and Chapman has acquired moneys by means of its allegedly unlawful practice.  However, the district court did not specifically consider whether Ackre had standing to raise an unlawful practice claim.  Rather, the district court decided Chapman and Chapman’s conduct did not constitute an unlawful sales practice under N.D.C.C. § 51-15-02, because that conduct was not deceptive or fraudulent under the procedure for payment for an injured Native American client’s medical treatment.  In this posture, we assume arguendo that Ackre has standing to make his unlawful practice claim, and we conclude he has not demonstrated a disputed factual issue that supports the claim.

[¶25] This record includes a February 2004 settlement and release which says Chapman and Chapman’s client obtained  settlement proceeds subject to any claims resulting from any medical liens or subrogation interests and that the “undersigned . . . agree[d] to indemnity and hold harmless [the tortfeasors and their insurance company] from any and all claims for indemnity, contribution and equitable subrogation which may be made against them by reason of the motor vehicle accident.”  The explicit language of the settlement in this record belies any claim that Chapman and Chapman has engaged in deceptive acts and practices by leading the general public to believe Chapman and Chapman can successfully evade enforcement of statutory hospital liens and subrogation interests.  Although a claim for an unlawful practice is generally a question of fact, 
see
 
State ex rel. Spaeth v. Eddy Furniture Co.
, 386 N.W.2d 901, 905 (N.D. 1986), the undisputed facts in this record are such that reasonable minds could only conclude that Chapman and Chapman’s alleged conduct does not constitute an unlawful practice.  
See
 
Zimprich
, 519 N.W.2d at 592-93 (stating summary judgment is appropriate if reasonsable minds could reach only one conclusion on the evidence submitted to the district court).  We conclude Ackre has not raised a factual issue regarding an unlawful practice under N.D.C.C. ch. 51-15.

IV

[¶26] We affirm the summary judgment.

[¶27] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Gerald W. VandeWalle, C.J.

Sandstrom, Justice, concurring specially.

[¶28] Although I generally agree with the majority opinion, I write separately to identify as dicta—statements unnecessary to resolve the case before us—those pronouncements in ¶ 23 which seek to define standing requirements for N.D.C.C. § 51-15-09, the private right of action under the Consumer Fraud Law.  That those standing pronouncements are dicta is established by the majority’s statement in ¶ 24:  “In this posture, we assume [for the sake of argument] that Ackre has standing to make his unlawful practice claim . . . .”

[¶29] North Dakota’s Consumer Fraud Law, N.D.C.C. ch. 51-15, was enacted by the 1965 Legislative Assembly at the request of Attorney General Helgi Johanneson, who explained that the bill was patterned after the Minnesota law.  
Hearing on H.B. 568 Before the House Industry and Business Comm.
, 39th N.D. Legis. Sess. (Jan. 20, 1965) (testimony of Helgi Johanneson, Attorney General).  The minutes reflect that other laws were inadequate to stop fraudulent business conduct.  
Id.
  The bill authorized the attorney general to take action in the public interest.

[¶30] Years after the original enactment, the legislature adopted amendments to N.D.C.C. § 51-15-09 to provide for a private right of action.  
Hearing on H.B. 1255 Before the Senate Judiciary Comm.
, 52nd N.D. Legis. Sess. (March 12, 1991) (testimony of Dave Huey, Assistant Attorney General) (limited resources of attorney general justified private right of action).  North Dakota adopted private right of action language that was much broader than that of Minnesota.  
Compare
 N.D.C.C. § 51-15-

09 and Minn. Stat. Ann. § 8.31.  The concept is sometimes referred to as a “private attorney general.”  
See, e.g.
, 
Data Processing Service v. Camp
, 397 U.S. 150, 154 (1970) (“a reliable private attorney general to litigate the issues of the public interest in the present case”).

[¶31] States have differed as to the prerequisites for private action under state consumer protection acts and remedies available.  
See, e.g.
, Bob Cohen, Annotation, 
Right to Private Action Under State Consumer Protection Act—Preconditions to Action
, 117 A.L.R.5th 155 (2004); Bob Cohen, Annotation, 
Right to Private Action Under State Consumer Protection Act—Equitable Relief Available
, 115 A.L.R.5th 709 (2004).

[¶32] These are issues that are not necessary to resolve this case.

[¶33] Dale V. Sandstrom